No. 14245

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

_____

IN THE MARRIAGE OF
CARLEY R. CROMWELL,

Petitioner and Appellant,

-vs-

GARDNER CROMWELL,

Respondent and Respondent.

_____

Appeal from:  District Court of the Fourth Judicial District,
Honorable  Robert Holter, Judge presiding.

Counsel of Record:

For Appellant:

Garlington, Lohn and Robinson, Missoula, Montana
Larrey E. Riley argued, Missoula, Montana

For Respondent:

Mulroney, Delaney, Dalby and Mudd, Missoula, Montana
Dexter L. Delaney argued, Missoula, Montana

_____

Submitted:  November 16, 1978

Decided: JAN 11 1979

Filed: JAN 11 1979

_____ Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal is brought by petitioner-appellant, Carley R. Cromwell, from a final property settlement and maintenance judgment and decree of the Fourth Judicial District Court, County of Missoula, following the dissolution of the parties' marriage. The District Court, the Honorable Robert M. Holter presiding without a jury, awarded the petitioner the former family home free and clear of mortgage indebtedness, the home furnishings, a $3,000 lump sum with which to pay her outstanding debts, and $2,000 as attorney fees. The decree further includes a maintenance award of $250 per month during the twelve months following February 1, 1978, $125 per month during the succeeding eighteen months, and none thereafter. The decree provides that the petitioner's eligibility for maintenance terminates with her death or remarriage.

On appeal petitioner requests a modification of the decree to provide for:

1. A permanent award of $500 maintenance per month; and

2. Security for future maintenance payments in the form of a claim against respondent's Teachers' Retirement or Social Security Funds.

Petitioner requests this Court to modify the decree without remand in view of the fact that the matters at issue have been thoroughly litigated in two trials. After a first trial and decree dated November 30, 1976, in which petitioner's claim for maintenance was entirely denied, petitioner appealed to this Court. In remanding the matter, this Court held that the District Court had abused its discretion in refusing to consider petitioner's needs for "some financial assistance during the transition from housewife to a single person."

Cromwell v. Cromwell (1977), ____ Mont. ____, 570 P.2d 1129, 1131, 34 St.Rep. 1193, 1196. On remand, the District Court heard full testimony on the parties' earning capacities and monthly expenses, and on respondent's ability to pay maintenance before it modified both the property settlement and maintenance provisions.

The issue on appeal is whether the District Court abused its discretion in awarding petitioner only $250 per month maintenance for twelve months, $125 per month for the succeeding eighteen months, and no maintenance thereafter.

The parties in this case were married in 1947. Petitioner, Carley Cromwell, was then age 25 and had been employed as a nurse prior to her marriage. In September, 1947, respondent Gardner Cromwell began his legal education at the University of Montana School of Law. During the next three years, while respondent attended school, petitioner worked as a housewife and cared for the parties' oldest son, who was born in May, 1948. Respondent worked for the Bonneville Power Administration following his graduation in 1950. Two more children were born before the end of 1953. In September, 1954, respondent entered the University of Michigan Law School and worked toward an LL.M. degree which he obtained in June, 1955. During that time petitioner cared for the parties' three children and worked two nights a week at the University of Michigan Hospital. Respondent taught at the New York University during the next two academic years, while petitioner cared for the children. A fourth child was born in June, 1957. In 1957 the family returned to Montana where respondent accepted a teaching position at the University of Montana School of Law. Respondent has taught each year since 1957 and obtained the degree of

-3-

S.J.D. from the University of Michigan by submission of a thesis.

During this time, 1957 through 1975, petitioner put most of her working time into caring for her family. She did work part-time during quarterly registration at the University of Montana from 1957 to 1965. She spent only one year since 1957, however, working part-time as a night nurse at the N.P. hospital in Missoula.

The parties separated in 1975, some twenty-eight years after their marriage. In May of 1975 petitioner began work as a hostess in a Missoula restaurant. That employment lasted about eighteen months, until October, 1976, when her job was terminated due to remodeling. Her highest wage during that period was $2.475 per hour.

Between October and December, 1976, petitioner was unable to find work despite repeated applications. During that time she obtained unemployment compensation of $68 per week. In December she secured employment with the Missoula County Food Stamp program and continued working there until a nursing position opened at a Missoula nursing home in April, 1977. As of this date, she continues to work at the nursing home as a relief nurse at irregular hours averaging about $500 per month of net income. There are no fringe benefits and no retirement plan available to her at the nursing home.

Petitioner also sought employment at St. Patrick's Hospital in Missoula, but upon learning her age and the number of years since she had actively worked as a nurse, the hospital refused to accept her application. The personnel director of the hospital testified that there currently are no openings for registered nurses at St. Patrick's;

that there are presently about eighty full-time nurses and forty part-time nurses employed there; and that there are approximately 100 applications for registered nurse positions on file. In the director's opinion, the same situation exists in the other two Missoula hospitals.

The District Court found that petitioner's reasonable monthly living expense is $789.50. That figure includes her present rental costs, but the court noted that when petitioner moves back into the family home, she will continue to have costs such as taxes and insurance which will replace the rental expense.

Paragraph 5 of the District Court's findings appears to state the rationale for its decree of $250 per month, then $125 per month, then zero maintenance. The second sentence of that finding concludes that "[i]t is likely that [petitioner] will, through diligent application and some assistance, continue to progress in her employment; there is little likelihood, however, that she will be able to substantially gain retirement benefits or accrue savings."

The District Court's findings show that respondent is a tenured professor of law at the University of Montana School of Law. His gross salary for the 1976-77 academic year was $22,862 and for the 1977-78 year was $25,862. His net income during this latter year was approximately $1,778.53 per month for each of the ten months during which he taught. The Court further found that respondent's living expenses are "about equal in amount to those of petitioner."

Respondent was remarried on December 18, 1976, to a woman with a five year old daughter. Respondent and his present wife agreed before their marriage that all of the interest in her property would remain in her name. Respon-

dent has lived in his present wife's home outside Missoula since his remarriage. His present wife, as manager of a Missoula business, has an average monthly income of $922.27 and additionally receives $75 per month in child support from her previous husband. Thus, as the District Court noted in paragraph 6 of its findings the "'family' net take-home of Respondent's new family [is] approximately $2,500" per month.

In addition respondent had, as of the date of trial, accumulated some twenty-six years toward retirement under the Montana Teachers' Retirement System. The District Court, in paragraph 4D of its findings, indicates that there have been contributions made into respondent's account "from income during the marriage" of approximately $19,000. That amount would be available to respondent now only if he quit his job and cashed in his account. However, if he were to continue in his position as a law professor and retire at age 60, respondent's interest in the retirement system would greatly increase. In a footnote to paragraph 4D, the District Court calculated the "present" value to the petitioner when he reached age 60 to be $224,239.32. This figure is based upon life expectancy, interest rate, final average salary and creditable years of service assumptions, and would be available to respondent only on a monthly pay basis. Respondent testified that he did not intend to retire until age 65. Thus, while life expectancy at that age would be somewhat decreased, the average annual compensation may be somewhat higher and the number of years of creditable service increased by five. In any case, as the District Court concluded, the actual value of his retirement to respondent cannot be calculated with exact certainty, but it does clearly represent "a considerable asset and security" to him.

-6-

Finally, the District Court found that respondent is "free to pursue other remunerative employment during the summer months."

Section 48-322, R.C.M. 1947, of the Montana Uniform Marriage and Divorce Act establishes two criteria upon which to determine a spouse's eligibility for maintenance following dissolution of marriage. These are that the spouse seeking maintenance (1) lacks sufficient property to provide for his or her reasonable needs, and (2) is unable to support himself or herself through appropriate employment. The District Court concluded that petitioner met both of these criteria, at least for two years following its decree. Petitioner's contention, that she will continue to be in this category indefinitely, must be weighed in terms of the next six criteria listed in subsection (2) of section 48-322. Those criteria require the District Court to consider the petitioner's financial resources, including the property apportioned to her in the decree, and her ability to meet her needs independently; the time necessary for her to make a transition to a single person, including any additional education or retraining; the standard of living established during the marriage; the duration of the marriage; her age and physical and emotional condition; and the respondent's ability to meet his own needs while providing additional support to her.

Petitioner has received in the decree full interest in the family home, worth about $48,000, and $3,000 cash with which to pay most of her outstanding debts. But her reasonable monthly needs, according to the District Court's findings, are $789.50, while her take-home pay is only $500 per month. At age fifty-six and having been separated from

nursing for some twenty years, her opportunities for full-time nursing work appear bleak. Additionally, she has no retirement plan in her present position.

On the other hand, respondent has retained his teaching position, his salary and his retirement benefits. He has remarried and his present wife and he have together nearly $2,500 per month in take-home pay.

Considering the criteria listed in section 48-322(2), it is clear that at present petitioner is unable to meet her present monthly needs through appropriate employment. The District Court decree, however, assumes that within a year she will be nearer to self-sufficiency, and that after two and one-half years, she will be able to support herself entirely. No evidence in the record supports this finding.

Under the criteria of the standard of living estab-lished during the marriage and duration of the marriage, the court is silent as to petitioner's expectation of a secure retirement prior to the dissolution. The District Court made elaborate findings concerning the "considerable" value to respondent of his interest in the Montana Teachers' Retirement System. Yet the decree makes no mention of the petitioner's needs at retirement age. Cf. Wilson v. Wilson (Or. 1972), 499 P.2d 828, 828-29.

Finally, the District Court notes that this case is typical in that "there really is not enough to satisfy all of the demands and requests of the Petitioner and Respon-dent" and that a decree requiring all petitioner asks for could be "disastrous to the party from whom payment is required." Yet the court ignores the competent evidence of respondent's ability to pay. The court did make a finding that the reasonable monthly needs of respondent are roughly

-8-

equivalent to petitioner's needs, that is, about $789.50. It also found that respondent's monthly take-home pay on a twelve month basis is $1,482.11. Thus, there appears no reason from the District Court's findings why respondent cannot continue to assist his former wife, to help her meet not only her present needs, but also to help prepare her for retirement.

Petitioner appears to justify her request for $500 per month on the decision in Eschenberg v. Eschenberg (1976), ____ Mont. ____, 557 P.2d 1014, 33 St.Rep. 1198. In that case, an award of $500 per month alimony was approved, but the husband was somewhat better off financially than respondent here, and the wife somewhat less capable of earning income than petitioner here. 557 P.2d at 1015-16, 33 St.Rep. at 1200, 1201-02.

Appellate courts in other states have seen fit to increase awards of maintenance where the result at the trial court level appeared unjust or inequitable. See In re Marriage of Fisher (Iowa 1976), 237 N.W.2d 452, 454; Wheeler v. Wheeler (1975), 193 Neb. 615, 228 N.W.2d 594, 596.

In light of the trial court's finding of petitioner's needs for support in addition to her own earnings, the standard of living during her marriage, which included an anticipated secure retirement and respondent's ability to provide continuing support to his former wife, this Court orders the decree modified so as to provide continued maintenance to petitioner. An equitable amount would be one which would assist her to meet her reasonable monthly expenses in excess of the $500 take-home pay she receives as a nurse. Thus, the amount should be at least $300 per month, until her death or remarriage. In addition petitioner is

also entitled to enjoy something of the secure retirement which she helped respondent to achieve. Therefore and for that purpose, an additional $100 per month until her death or remarriage which she could save toward retirement does not appear unfair to either her or respondent. The decree is ordered modified in accordance with these suggested amounts.

Paragraph Nos. 1, 2, 3, 4(a), and (5) of the decree of the District Court are affirmed. Paragraph 4(b) and 4(c) are vacated and shall be amended as ordered herein. Paragraph No. 6 is vacated on order of this Court and shall read instead: "That upon completion of the various transfers and all payments set forth herein the jurisdiction of the presiding Judge shall cease, however; continuing jurisdiction shall remain in the District Court of the Fourth Judicial District, County of Missoula."

The cause is remanded to the District Court to enter judgment according to this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-