No. 84-345

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

IN RE THE MARRIAGE OF

BEVERLY C. ROLFE,

Petitioner and Appellant,

and

OLIVER W. ROLFE,

Respondent and Respondent.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Datsopoulos, MacDonald & Lind; Dennis E. Lind,
Missoula, Montana

For Respondent:

Mulroney, Delaney & Scott; P. Mars Scott, Missoula,
Montana
Connell & Beers; Thomas Beers, Missoula, Montana

---

Submitted on Briefs: March 14, 1985

Decided: May 2, 1985

Filed:

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Beverly Rolfe appeals from a property settlement, and a maintenance and child custody award by the Fourth Judicial District, Missoula County. The child custody is affirmed; property settlement and maintenance are remanded.

Beverly Rolfe (hereinafter wife) and Oliver Rolfe (hereinafter husband) were married in 1968 and divorced in 1983. They have two sons, a 14 year old and a 10 year old. The husband, 46 years old and in good physical health, is a tenured professor at the University of Montana earning $28,484 as a full professor under contract for ten months. He has a Ph.D. in Romance Linguistics, has taught at the University since 1970, and intends to continue. The wife, 46 years old and in good health except for periodic blackouts for which she takes medication, was a homemaker throughout the marriage. She did typing and occasional odd jobs, earning $1,000 to $2,000 a year during the marriage. She has a B.A. in education and taught for several years prior to marriage but quit in 1968. The District Court found "It is possible for [the wife] to earn approximately $17,000 per year based on her previous experience, education and training."

The parties fought bitterly over child custody; both claiming the other was mentally ill and would physically and mentally abuse the children. They introduced extensive testimony and exhibits to bolster their claims. The court listened to conflicting testimony for four days. A psychiatrist, a psychologist, the husband's mother, the wife's mother, the wife's brother, three friends and members

- 2 -

of their church, a foster-care parent, three university colleagues of the husband, and the husband's former attorney all testified. Sixteen exhibits were introduced into evidence. Clearly the marriage was very unhappy and the record raises questions about either parents' ability to raise the children.

At first the children expressed a desire to live with their mother, but later said they preferred to live with their father. Both children, but particularly the older child, vehemently expressed this preference by telephoning school counselors, principals, attorneys and other professionals, checking out library books, and emphatically telling the judge their preference in camera. The children's attorney, appointed by the court to represent their interest, believed the children's best interest was to be placed with their mother and, contrary to the children's wishes, advocated this position. The attorney based his belief on the psychiatrist's and psychologist's recommendations and on conversations with the children. The older child complained to the judge about the attorney.

The parties also fought over the division of the marital estate. The marital estate was valued at $179,980.70. It was divided as follows:

|                          | Wife       | Husband    |
| ------------------------ | ---------- | ---------- |
| Equity in family home    | 46,000     |            |
| Equity in Rental units   | 16,434     | 23,056     |
| Family cabin             |            | 20,000     |
| Cars                     | 0          | 1,750      |
| Checking account         | 1,000      | 1,200      |
| Certificate of Deposit   | 1,000      |            |
| Investments              |            | 6,284      |
| Retirement Fund          |            | 20,800     |
| Tax Shelter Annuity      |            | 7,665      |
| Life Insurance Withdrawal |           | 2,916.70   |
| Credits                  | 3,542.50   | 3,542.50   |
| Household items          | 17,660     | 4,880      |
| Payments to wife         | 2,250      |            |
|                          | $87,886.50 | $92,094.20 |
| Less property brought to the marriage | 2,410 | 9,955 |
|                          | $85,476.50 | $82,139.20 |
| Less debts assumed       | 3,901      | 1,645      |
|                          | $81,575.50 | $80,494.20 |

The wife valued the marital estate at approximately $160,106. The major differences in the parties' values were in the rental units and the household goods. He valued the rental units, which he received, at $23,056 and she valued them at $35,733. He valued the household goods at $22,540 and she did not value them. She received household goods valued at $17,660, while he received $4,880 of household goods. With a few exceptions the husband's asset valuations and his proposed distributions were used. The trial court gave no reasons for this.

The wife raises five issues on appeal: error in awarding child custody to the father, error in distributing property of the marital estate, error in awarding her maintenance for only one year, error in refusing to award attorneys fees, and error in determining the husband was not responsible for child support payments already incurred.

The children, through their attorney, also raise the issue of error in child custody. In addition, the children's attorney asks this Court to address the ethical question of the role of the attorney appointed for a child in a custody dispute. Should the attorney zealously represent and advocate the child's wishes or advocate what he determines is the best interest of the child? This question is considered at the end of the opinion.

## Issue No. 1: Child Custody

The wife's first issue is that to determine the children's best interests the District Court emphasized the children's wishes and ignored the factors listed in § 40-4-212, MCA, giving greater weight to the husband's evidence and refusing to follow the recommendation of the children's attorney. She argues this is reversible error and this Court should grant her custody of the children.

As this Court has iterated many times, the trial judge in a divorce proceeding is in a better position than this Court to resolve child custody. The district court's decision is presumed correct and will be upheld unless clear abuse of discretion is shown. The appealing party must show, by clear error (Rule 52(a), M.R.Civ.P.) that the record does not support the judgment of the district court. Lee v. Gebhardt (1977), 173 Mont. 305, 309, 567 P.2d 466, 468.

In this case, both parties stockpiled an impressive supply of ammunition for verbal warfare with each other. The District Court heard testimony from a psychiatrist, a psychologist, a school counselor, neighbors, relatives, and colleagues. Much of the testimony conflicts and some of it concerns the possibility of physical abuse of the children by both parents. The record indicates that the judge's

paramount concern was the children's best interest, not merely their wishes. The findings show the judge considered all the factors listed in § 40-4-212, MCA.

The psychiatrist, the psychologist and the children's attorney all recommended that the children be placed with their mother. Undoubtedly, the wife presented credible evidence supporting her custody claim, but the husband also provided evidence from family friends and colleagues and the District Court found this testimony more credible. It is the District Court's determination of the children's best interest, not the expert witnesses' opinion, that controls. The factors set forth in § 40-4-212, MCA, were considered, appropriate findings were made, and sufficient evidence supported those findings. The custody award is affirmed.

<u>Issue No. 2</u>: <u>Property Distribution</u>

The wife argues that the property distribution is wrong for the following reasons: the husband's values were adopted nearly verbatim without the court indicating the basis of the determination despite conflicting evidence from the wife's experts and the husband; the husband overvalued property the wife received and undervalued property he received; the husband received more income producing property than the wife; the value of personal property brought into the marriage 15 years ago was set off; and, there are numerous errors in the value of the marital estate caused by counting some items twice and omitting others.

The standard of review of a property settlement has been stated many times. In dividing property in a marriage dissolution the district court has far reaching discretion and its judgment will not be altered without a showing of clear abuse of discretion. The test of abuse discretion is

- 6 -

whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. In re Marriage of Vert (1984), 680 P.2d 587, 41 St.Rep. 895. Applying this standard, the District Court abused its discretion and we find four substantial injustices: the husband's values, while not adopted absolutely verbatim, were almost always accepted without explanation even though the record indicates some of the husband's values are questionable; as her share of the marital estate the wife received household goods with inflated values while the husband received income producing property such as stocks and an annuity; non-income producing property brought into the marriage 15 years ago was "deducted from the division of property" resulting in an inequitable and unworkable property division; and, various "credits"--payments on real property, withdrawals from checking accounts, child support--appeared as distributions of property but it is unclear what a "credit" is in this context.

Valuation. When conflicting valuation evidence is presented the district court must indicate the basis for its determination. If no explanation is made the court has abused its discretion Larson v. Larson (Mont. 1982), 649 P.2d 1351, 39 St.Rep. 1628. In this case, for example, the wife presented testimony from a real estate broker about the value of rental property; the husband offered his opinion. The District Court should give the reason for choosing the husband's values.

The husband's pension was valued at the amount of his contribution. It is well established in this state and other states that retirements benefits are part of the marital

- 7 -

estate. Karr v. Karr (Mont. 1981), 628 P.2d 267, 38 St.Rep. 506 and see 94 A.L.R.3d 176. The question is what value to assign to the pension. Valuing pensions presents several problems; as the Supreme Court of California, en banc, pointed out in Re Marriage of Brown (1976), 15 Cal.3d 838, 544 P.2d 561, 126 Cal.Rptr. 633, one problem is what value, if any, should be assigned to nonvested benefits.

Pension rights can be categorized into three classes:

(1) Matured--Participant has an unconditional right to immediate payment.

(2) Vested but not matured--Participant's claim to the pension rights would survive voluntary or involuntary termination but funds are not presently payable.

(3) Nonvested--Participant has no claim to pension rights in the event of termination.

In this case, there may be nonvested pension benefits in the form of employers' future contribution. The value of these benefits was not considered.

Nonincome-producing assets to wife. More serious error exists because the District Court adopted the husband's values for household goods and then awarded most of this property to the wife. The District Court considers the husband's testimony to be the more credible for valuing but this Court questions that credulity. One example is an item called a "sterling set of twelve." The husband valued it at $3,500 and suggested that it be awarded to the wife. The wife had it appraised and it was valued at $1,068. The husband testified that many of these "assets" were acquired very cheaply at rummage sales and their value comes from his labor. He prepared detailed lists with such items as:

| | |
|---|---|
| Waffle Iron | $40.00 |
| Bath Towels | $75.00 |
| Canning Jars | $40.00 |
| Iron | $20.00 |

This makes up much of the wife's property award while he receives Montana Power Stock, tax annuities and his pension. This is inequitable. This Court sympathizes with the District Court because it was forced to referee two adults using the court system to place a value on tea cups and bath towels. On remand we suggest the court must reach a decision about the division of household assets really having a market value and the value of non-marketable items should not be included in the marital estate.

Prenuptial property. Section 40-4-202(1), MCA, allows property acquired before the marriage to be considered in equitably apportioning the marital estate. However, this statute does not mandate that each party be returned the value of all the property they brought into the marriage. In this case because the length of the marriage, 15 years, the District Court erred in returning the value of these assets to the parties. This prenuptial property was also "valued" by the husband. It consisted of:

| | Husband | Wife |
|---|---|---|
| Equity in home | $1,500 | |
| Furniture, etc. | 1,555 | $1,310 |
| Car | 1,800 | 400 |
| Cash | 5,000 | |
| Coffee Grinders | 100 | |
| | $9,955 | $1,710 |

These assets have long since been consumed, just as the capital assets of a business eventually are matched against income as expenses.

It is not clear what the District Court intended in the way it handled the prenuptial property of the parties. Its

computations indicate the District Court first determined the values of the marital estate to be assigned to the parties, and then subtracted the prenuptial values from each party's share, instead of from the opposite party's share. This had the effect of taking away from each party the value of the property each party brought into the marriage.

Various credits. The wife contended that the District Court has double counted assets. The District Court amended its findings to correct a $1,000 error. The findings show "credits" as assets, withdrawals as assets and payments as assets. This Court suggests that the District Court determine the value of the present estate, divide it, and then consider whether prior distributions or payments should be added or deducted fron one or the other of the parties.

### Issue No. 3: Maintenance

The wife argues that the District Court relied too heavily on the husband's assertion that the wife could earn $17,000 a year as an elementary school teacher. We agree.

It may be a fact that a kindergarten teacher in Missoula earns $17,000 per year but there is nothing in the record to support the finding that the wife in this case can earn that amount. The wife is 46 years old, without a teaching certificate at this time, and without teaching experience for the last 16 years. The husband has continued to work throughout their marriage and is now making $2,000 per month. Awarding maintenance for one year simply does not meet the criteria of § 40-4-203, MCA. It ignores the time necessary to find employment, the standard of living of the marriage, the duration of the marriage, the age and physical condition of the wife, and the husband's ability to meet his needs. Cromwell v. Cromwell (1979), 180 Mont. 40, 588 P.2d 1010.

In Bowman v. Bowman (Mont. 1981), 633 P.2d 1198, 38 St.Rep. 1515, this Court held that in awarding maintenance the district court must consider whether assets awarded to the spouse seeking maintenance are income producing. On remand, after reconsidering the distribution of the marital estate, the District Court must reconsider the wife's salary prospects and duration of maintenance.

## Issue No. 4: Attorneys Fees

The wife argues that the District Court did not state the reason for refusing to grant her attorneys fees, therefore this Court should grant her attorneys fees. This Court has held that in a divorce case a district court must indicate its reasons for refusing to grant attorneys fees. Hammeren v. Hammeren (Mont. 1982), 663 P.2d 1152, 1154, 39 St.Rep. 2222, 2223. In this case the District Court at Finding no. 37, states "after considering the financial resources of both parties, the Court finds that both parties have the ability to pay their own attorney's fees and should do so." This is a clear indication of the court's reasoning, therefore the denial of attorneys fees is upheld.

## Issue No. 5: Child Support Payments

In April 1983 the parties filed a stipulation with the District Court that the husband would pay child support of $400 per month. In June 1983, there was a hearing to determine whether the children could go to Canada with the husband, but no request to modify support was made. On July 6, 1985, Judge Henson issued an order that said nothing specific about child support. The final sentence of that order stated. "The provisions of the stipulation regarding custody and visitation rights of the children shall remain in force and effect in all respects except as specifically

- 11 -

amended by this order." In other words, on July 6, 1983, the District Court ordered the husband to pay child support during the summer. In the fall the husband sought to modify the stipulation retroactively so as not to pay support during the time he had the children.

Section 40-4-208(1), MCA, states, "Except as otherwise provided in 40-4-201(6), a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to the motion for modification." The District Court did not have the power on March 2, 1984 to modify payments resulting from a July 9, 1983 order. The District Court is reversed on this issue and the husband is ordered to make the child support payments due during the summer of 1983.

We do not address the issue of child support from the noncustodial parent in compliance with In re the Marriage of Carlson (Mont. 1984), 693 P.2d 496, 41 St.Rep. 2419 because the husband does not raise it.

### Role of Attorney Appointed
### to Represent Children in Custody Dispute

The attorney appointed by the District Court to represent the children has raised an important and difficult ethical question--is the attorney appointed to represent a child in a custody dispute ethically bound to advocate the child's wishes or to advocate the child's best interests? Our remarks on this question are prefaced with the comment that we are addressing only the very narrow question of court-appointed representation of a child in a custody dispute arising out of a divorce. Nothing is being said about the representation of individuals suffering any disability besides minority nor are we addressing the

representation of minors in adversary or quasi-adversary proceedings. Clients under a disability are as entitled to the protection of their due process rights as any other client; if anything, these individuals have a greater need for zealous representation.

Disciplinary Rule 7-101(A) is the applicable rule under the Code of Professional ethics.

"DR 7-101 Representing a Client Zealously.

"(A) A lawyer shall not intentionally:

"(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

". . .

"(B) In his representation of a client, a lawyer may:

"(1) Where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client.

Ethical Consideration 7-12 is also applicable:

"Any mental or physical condition of a client that renders him incapable of making a considered judgment on his own behalf casts additional responsibilities upon his lawyer. Where an incompetent is acting through a guardian or other legal representative, a lawyer must look to such representative for those decisions which are normally the prerogative of the client to make. If a client under disability has no legal representative, his lawyer may be compelled in court proceedings to make decisions on behalf of the client. If the client is capable of understanding the matter in question or of contributing to the advancement of his interests, regardless of whether he is legally disqualified from performing certain acts, the lawyer should obtain from him all possible aid. If the disability of a client and the lack of a legal representative compel the lawyer to make decisions for his client, the lawyer should consider all

circumstances then prevailing and act with care to safeguard and advance the interests of his client. But obviously a lawyer cannot perform any act or make any decision which the law requires his client to perform or make, either acting for himself if competent, or by a duly constituted representative if legally incompetent."

Under the presently proposed Rules of Professional Conduct the applicable rule will be Rule 1.14.

"RULE 1.14 Client Under a Disability.

"(a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability or for some other reasons, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

"(b) A lawyer may seek the appointment of a guardian or take other protective action with respect to the client, only when the lawyer reasonably believes that the client cannot adequately act in the client's interest."

Ordinarily, a lawyer's relationship with a disabled client should not differ from the normal client-lawyer relationship. In a normal client-lawyer relationship the lawyer's role is not to determine the client's interest, his role is to advocate the client's interest.

The child custody dispute presents a unique situation because the child, although not a party to the action, is the person most affected by the action. The reason there is a custody action is that the child is not yet mature enough to be self-determining. In recognition of this the legislature passed § 40-4-205, MCA.

"The court may appoint an attorney to represent the interests of a minor dependent child with respect to his support, custody, and visitation. The county attorney and the deputy county attorneys, if any, may not be appointed for this purpose. The court shall enter an order for costs and fees in favor of the child's attorney. The order shall be made against either or both parents, except that if the responsible party is indigent, the costs shall be waived."

The interest referred to in this statute is the child's best interests, not the child's wishes. As this Court has reiterated many times, in all matters relating to child custody and visitation, the best interests of the child controls.

We recognize that in Montana the attorney for the child is not a guardian ad litem. Nevertheless his role in a custody dispute is to advocate the child's best interest, not the child's wishes. This is a difficult role, particularly when the child's expressed wishes conflict with the attorney's determination of his best interests. But, given the immaturity of the client and the pressures that often exist in a divorce situation, it is this Court's opinion that the best interests of the child, the paramount concern in all custody disputes, is best served by modifying the traditional lawyer-client relationship.

As the Alaska Court stated in Veazey v. Veazey (Alaska 1977), 560 P.2d 382, 390:

> "[I]t is equally plain that the guardian is not required to advocate whatever placement might seem preferable to a client of tender years. A young child may well prefer the less disciplined environment to the more disciplined one. He may prefer the parent who takes him on outings for recreational activities over the one who stays home to prepare his meals and keep the home clean. But the guardian would be abdicating his responsibility to his client and the court to use his best professional judgment, were he to automatically recommend that young child's preference without further scrutiny. A child who has been living for some time with one parent might understandably select that parent, good or bad, because it represents the only home the child has ever known. This 'psychological parenthood,' while relevant, is not conclusive concerning what is in the child's best interests.
>
> "A child may have his thinking consciously or subconsciously colored by one parent against the other. The guardian ad litem must try to delve into this question and take all relevant factors

- 15 -

into account regardless of what the child may or may not believe he 'ought' to say."

This Court is aware that determining a child's best interests is difficult and is concerned about the child's right to an advocate. We reiterate our position that a child's wishes deserve serious consideration, In Re Marriage of Kramer (1978), 177 Mont. 61, 69, 580 P.2d 439, 444. If the court-appointed attorney concludes that the child's expressed wishes are not in his best interest the attorney must disclose this to the court. The district court must be clearly informed of the child's wishes and the basis for the attorney's determination that it is not in the child's best interest to live with the preferred parent.

Reversed and remanded for further proceedings in accordance with this opinion. Costs to the wife.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

- 16 -