**K.C. CLARK, f/k/a K.K. Alexander, Appellant (Plaintiff),**

v.

**Clifford Graham ALEXANDER, Appellee (Defendant).**

No. 96–298.

Supreme Court of Wyoming.

Feb. 19, 1998.

---

TAYLOR, Chief Justice.

Appellant challenges the admission of tape recordings of her telephone conversations with her children at a modification of custody and child support hearing. Appellant also asserts the district court erred in allowing the guardian ad litem to testify while actively participating as counsel for the minor children. We find the district court erred in admitting the tape recordings through the testimony of the guardian ad litem, but that the error was harmless regarding the custody determination. We reverse and remand, however, the district court's order that appellant pay all fees and costs for appellee's attorney and those of the guardian ad litem.

## I. ISSUES

The parties presented a total of fourteen issues for review which are consolidated as follows:

■ 1. Whether the district court abused its discretion by admitting intentionally recorded tapes in violation of state and federal wiretap laws.

■ 2. Whether the district court abused its discretion in allowing the guardian ad litem to testify while participating as advocate for the parties' minor children.

■ 3. Whether the district court abused its discretion in ordering appellant to pay all fees and costs of the guardian ad litem and of the attorney for appellee.

## II. FACTS

Appellant, K.C. Clark (Mother), and appellee, Clifford Graham Alexander (Father), married in 1981 and had three children. On February 2, 1993, the district court granted a divorce and provided that the parties would have joint custody of the children, with Father having residential custody subject to a liberal visitation schedule for Mother.

On October 11, 1994, Mother filed a "Verified Petition for Modification of Child Custody," alleging a change of circumstances engendered by Father's relocation with the two younger children to a trailer home and the oldest child residing with "grandfather" in a

Sue Davidson of Aspen Ridge Law Office, P.C., Cheyenne, for Appellant.

Chris Edwards of Simpson, Kepler & Edwards, LC, Cody, for Appellee.

Diane B. Walsh, Cody, Guardian ad Litem.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

house on the same property. Mother's petition was accompanied by a request for the appointment of a guardian ad litem.

An order appointing the guardian ad litem was entered January 8, 1996 and made retroactive to November 23, 1994 to reflect the parties' consent to the active participation of the guardian ad litem from that date. The guardian ad litem visited the children in person and by telephone, conducted in-home visits and interviews with both parents, stepfather, and grandfather, and interviewed other family members, teachers, neighbors, and clergy.

In the spring of 1995, Father informed the guardian ad litem of his concern that Mother was inappropriately involving the children in the custody dispute during telephone visits. The guardian ad litem responded that she would like to hear tape recordings of such conversations. Father informed her that his lawyer had advised against taping, and the guardian ad litem agreed Father must follow his attorney's advice.

Taping was not further discussed until Father's attorney telephoned the guardian ad litem and stated Father had inadvertently taped a conversation between Mother and the two younger children on September 23, 1995. On the tape recording, Mother and stepfather spoke with the nine-year-old daughter about their frustration with the custody proceeding and indicated Father was to blame for the delay. During the conversation, the child was urged to telephone the guardian ad litem to report that Father often left the children unsupervised, that the delay was upsetting, and to convey her preference for residing with her mother.

Shortly after listening to the tape recording, the guardian ad litem told Mother's attorney of the tape recording's existence and recommended Mother refrain from involving the children in the custody dispute. The guardian ad litem also consented, without informing Mother, to the continued taping of Mother's conversations due to concerns that Mother would further involve the children during telephone visits. Father proceeded to record Mother's telephone conversations with the children, but only two subsequent conversations, one on October 8, 1995 and one on October 28, 1995, were submitted to the guardian ad litem.

On November 21, 1995, the guardian ad litem issued a report recommending primary residential custody remain with Father. This recommendation was based in large part on the substance of the taped conversations between Mother and the children. On December 21, 1995, Mother filed a "Motion for Removal of the Guardian Ad Litem and For Protective Order Regarding Evidence Illegally Obtained." The next day, Mother filed a "Motion in Limine" seeking to preclude admission of the tape recordings at the custody modification hearing because they were obtained in violation of state and federal wiretap laws. An unreported hearing was held on these motions on January 2, 1996.

On January 7, 1996, the guardian ad litem submitted a supplemental report addressing the circumstances leading to her consent to the taping. The supplemental report also stated that during a telephone conversation with Mother, Mother said she knew she was being taped while speaking with the children. A four-day custody modification hearing commenced on January 8, 1996. The same day, the district court issued its Order Nunc Pro Tunc appointing the guardian ad litem and an order denying Mother's Motion in Limine. The district court held that the tape recordings were not procured in violation of the wiretap laws because the first tape recording was inadvertently obtained and the vicarious consent of both Father and the guardian ad litem on behalf of the children removed the subsequent tapes from the wiretap prohibitions. The district court also found Mother's admission that she knew the conversations were taped indicated her consent as well.

At the modification hearing, Father called the guardian ad litem as his first witness. Through her testimony, the tapes recorded September 23, 1995 and October 8, 1995 were received into evidence, as well as both the guardian ad litem reports. Mother's continuing objection to the admission of the tape recordings was noted; however, no objection was made to the guardian ad litem's testimony or the admission of the reports.

At the close of the proceeding, the district judge orally ruled that the best interests of the children would be served by recognizing that the initial provision of joint custody was a misnomer and, in fact, awarded sole custody to Father as residential custodian of the children. The district court, therefore, granted Father continued sole custody. The district court also ordered Mother, Father, and children to receive counseling, and the parents to cease pressuring the children regarding custody issues. The district court further ordered that the parties not disclose to the children the testimony at trial nor the fact that their conversations with Mother had been taped, and would continue to be taped for six months.

The district court followed its oral ruling with a decision letter, stating in part:

> In view of the extreme circumstances of this case, the Court will further order that [Mother] is to pay the fees and expenses of the Guardian ad Litem and is further to pay the fees and expenses of [Father's] attorney * * *.

The final "Order for Modification of Child Support and Child Visitation and for Reimbursement of Expenses" was filed on June 26, 1996. This timely appeal followed.

### III. STANDARD OF REVIEW

While several issues are raised on appeal, the ultimate issue in this case is the district court's determination of custody. The party seeking a modification of the custody provisions of a divorce decree has the burden of showing that a material and substantial change of circumstances has occurred, after the entry of the initial decree, and that modification is in the best interests of the children. *Semler v. Semler*, 924 P.2d 422, 424 (Wyo.1996). An appellate court will not interfere with the trial court's decision regarding modification of custody absent a procedural error or a clear abuse of discretion. *Id.* " 'Judicial discretion is a composite

of many things, among which are conclusions drawn from objective criteria * * *.' " *Mintle v. Mintle*, 764 P.2d 255, 257 (Wyo.1988) (*quoting Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). Our assessment of the circumstances in the context of an alleged abuse of discretion

> is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court. In review of the evidence, we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party.

*Basolo v. Basolo*, 907 P.2d 348, 353 (Wyo. 1995).

Decisions concerning the admissibility of evidence are within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion, i.e., when the trial court acts outside the bounds of reason or commits an error of law. *Hayes v. State*, 935 P.2d 700, 702 (Wyo.1997); *Wilder v. Cody Country Chamber of Commerce*, 933 P.2d 1098, 1107 (Wyo.1997). The burden is upon the appellant to demonstrate such abuse. *Blake v. State*, 933 P.2d 474, 477 (Wyo.1997); *Vit v. State*, 909 P.2d 953, 956–57 (Wyo.1996).

### IV. DISCUSSION

Among several issues on appeal, Mother devotes the majority of her argument to the alleged inadmissibility of the taped conversations under the federal and state wiretap laws.[1] This was the subject of the unrecorded hearing on January 2, 1996. Mother has made no attempt to reconstruct what occurred at the hearing pursuant to W.R.A.P. 3.03. We are, therefore, asked to resolve an issue of first impression in Wyoming without benefit of any record of the proceedings.

---

1. Wyo. Stat. § 7–3–602 (1997) prohibits the willful interception or disclosure of wire, oral or electronic communications and provides for civil penalties upon proof of a violation of the statute. Subsection (b) of this section removes liability for interceptions made with the prior consent of one of the parties to the communication. Wyo. Stat.

§ 7–3–606(p) (1997) states that "[t]he contents of any intercepted wire, oral or electronic communication or evidence derived therefrom shall not be admitted as evidence in any trial, hearing or other proceeding in this state unless the interception was performed in accordance with this act."

The intrusion into a parent's relationship with a child through clandestine interception of telephone conversations causes great concern. Given the future impact of an appellate decision and the availability of a collateral action under the wiretap statutes, we decline to address this issue at this time. Because we find that the tape recordings were not properly before the district court on other grounds, we defer consideration of the parameters of the wiretap statute until such time as a complete record provides the proper foundation for our determination.

## A. ROLE OF GUARDIAN AD LITEM

▮ The role of the attorney/guardian ad litem during the proceedings is central to the disposition of this case. Mother claims that because the guardian ad litem actively participated as the children's attorney, it was improper to allow her to testify at the modification hearing. Father and the guardian ad litem respond that Mother failed to preserve this issue when no objection was lodged with the district court.

▮ Generally, we will not address an issue raised for the first time on appeal absent special circumstances. *Rowan v. Rowan,* 786 P.2d 886, 889 (Wyo.1990). However, "[t]he definition of the precise roles of the attorney and the guardian ad litem for children is still evolving and not without difficulty." *S.S. v. D.M.,* 597 A.2d 870, 877 (D.C.App.1991).[2] In Wyoming, the role of an attorney or guardian ad litem in custody cases is not addressed by statute, and like many jurisdictions, case law has failed to clearly delineate the parameters of the duties incumbent upon appointment. Moreover, the juxtaposition of the separate roles of attorney and guardian ad litem into one "attorney/guardian ad litem," appears especially problematic.[3] Given the lack of clear direction provided to those who must fulfill this role in Wyoming, and our certainty that the issues in this case will reappear in the future, we speak to those issues here. In providing guidance to the role of an attorney appointed to represent a child while at the same time acting as guardian ad litem, we do not intend to usurp the role of the district court in appointing individuals to act solely as an

**2.** Our decision here does not address many areas of chronic confusion in the appointment of a guardian ad litem, e.g., when an appointment is necessary, the necessary qualifications to serve as guardian ad litem, and the timeliness of the court's communication of the specific duties expected by the court. In recognition of the need for clarification and the lack of uniformity throughout our state, we urge our courts, legislators, professionals, and concerned citizens to undertake a consolidated effort to address the appointment of counsel and guardians ad litem for Wyoming's children. *See In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162, 178–80 App. A (1993); Minnesota Rules of Guardian Ad Litem Procedure (adopted August 27, 1997); Colo.Rev.Stat. 14–10–116 (effective July 1, 1997); Michigan Guidelines for Advocates for Children (submitted by the State Bar of Michigan's Children's Task Force); Missouri Supreme Court Standards for Guardians Ad Litem (Sept. 17 1996); Virginia Standards to Govern the Appointment of Guardians Ad Litem, Va.Code 16.1–266.1 (effective Jan. 1, 1995); *ABA Proposed Standards of Practice for Lawyers Who Represent Children In Abuse and Neglect Cases* (approved by the Council of the Family Law Section August 5, 1995), 29–3 Fam. L.Quart. 375 (1995); *Representing Children: Standards for Attorneys and Guardians Ad Litem in Custody or Visitation Proceedings,* 13 J. Am. Acad. Matrim. Law. 1 (Summer 1995); and Renee Goldenberg and Nancy S. Palmer, *Guardian Ad Litem Programs: Where They Have Gone*

*and Where They Are Going,* 69–Dec. Fla. B.J. 83 (1995) (discussing recent amendments to Florida statutes regarding guardian ad litem practice).

**3.** *See Leary v. Leary,* 97 Md.App. 26, 627 A.2d 30, 37 (1993) ("A dichotomy exists between the attorney as guardian and the attorney as advocate, and the lines become very easily blurred."); Ann Haralambie, *The Role of the Child's Attorney in Protecting the Child Throughout the Litigation Process,* 71 N.D. L.Rev. 939, 941 (1995) ("Courts and legislatures have not provided much assistance and have often required attorneys to assume dual and potentially inconsistent roles."); Nancy J. Moore, *Conflicts of Interest in the Representation of Children,* 64 Fordham L.Rev. 1819, 1842 (1996) ("[A] more common example of a possible conflict arising from duties * * * is the lawyer in a child custody * * * case who serves *both* as the child's attorney *and* as guardian ad litem.") (emphasis in original); and Roy T. Stuckey, *Guardians Ad Litem as Surrogate Parents: Implications for Role Definition and Confidentiality,* 64 Fordham L.Rev. 1785, 1786 (1996) ("Role definition and confidentiality issues can arise whenever attorneys are appointed to serve as guardians *ad litem;* however, they become even more complex when an attorney is appointed to serve as both the attorney and the guardian *ad litem* for a child.").

attorney or as guardian ad litem. It is imperative, however, that the appointee request clarification from the appointing court if questions regarding the duties arise.

■ The guardian ad litem's role has been characterized as investigator, monitor, and champion for the child. Ann M. Haralambie and Deborah L. Glaser, *Practical and Theoretical Problems with the AAML Standards for Representing "Impaired" Children*, 13 J. Am. Acad. Matrim. Law. 57, 73–74 (Summer 1995). The traditional role of a guardian ad litem in custody proceedings has been described as follows:

> [I]n custody matters, the guardian ad litem has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance, and not strictly as legal counsel to a child client. * * * In essence, the guardian ad litem role fills a void inherent in the procedures required for the adjudication of custody disputes. Absent the assistance of a guardian ad litem, the trial court, charged with rendering a decision in the "best interests of the child," has no practical or effective means to assure itself that all of the requisite information bearing on the question will be brought before it untainted by the parochial interests of the parents. Unhampered by the ex parte and other restrictions that prevent the court from conducting its own investigation of the facts, the guardian ad litem essentially functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—i.e., the "best interests of the child." Although the child's preferences may, and often should, be considered by the guardian ad litem in performing this traditional role, such preferences are but one fact to be investigated and are not considered binding on the guardian. * * * Thus, the obligations of a guardian ad litem necessarily impose a higher degree of objectivity on a guardian ad litem

than is imposed on an attorney for an adult.

*State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 384 (Mo.App.1993); *Berndt by Peterson v. Molepske*, 211 Wis.2d 572, 565 N.W.2d 549, 553 (1997); *see also McKay v. Owens*, 130 Idaho 148, 937 P.2d 1222, 1230 (1997) (noting traditional role of guardian ad litem as arm of the court). In many jurisdictions, the guardian ad litem is required to oversee the progress of proceedings involving the child and, after reaching an independent conclusion, to recommend to the court the outcome which the guardian ad litem believes to be in the child's best interests. *See* Ann M. Haralambie and Deborah L. Glaser, *supra*, 13 J. Am. Acad. Matrim. Law. at 70–72, nn. 55–57 (listing guardian ad litem duties in various jurisdictions).

■ In contrast, the traditional role of an attorney is that of advisor, advocate, negotiator and intermediary. Wyo. R. Prof. Cond., Preamble. Counsel appointed to represent a child must, as far as reasonably possible, maintain a normal client-lawyer relationship with the child, Wyo. R. Prof. Cond. 1.14, and "abide by a client's decisions concerning the objectives of representation * * *." Wyo. R. Prof. Cond. 1.2. Thus, counsel for a child is not free to independently determine and advocate the child's "best interests" if contrary to the preferences of the child.

■ Wyo. Stat. § 14–3–211 (1997), addressing the appointment of counsel to represent children in abuse and neglect proceedings, distinguishes the role of guardian ad litem from the role of "counsel for the child," but combines the two if no guardian ad litem is appointed.[4] Although the statute does not address custody proceedings, in *Moore v. Moore*, 809 P.2d 261, 264 (Wyo.1991), we applied the statutory language regarding "representation" of the child to custody cases, and held that an attorney appointed as guardian ad litem may not engage in *ex parte*

4. Wyo. Stat. § 14–3–211 provides:

(a) The court shall appoint counsel to represent any child in a court proceeding in which the child is alleged to be abused or neglected. Any attorney representing a child under this section shall also serve as the child's guardian ad litem unless a guardian ad litem has been appointed by the court. The attorney or guardian ad litem shall be charged with representation of the child's best interest.

(b) The court may appoint counsel for any party when necessary in the interest of justice.

communications with the trial court. We stated that the attorney/guardian ad litem acts as an advocate for the child and "has the same ethical responsibilities in the proceeding as any other attorney." *See also In Interest of MFB*, 860 P.2d 1140, 1152 (Wyo. 1993) (the attorney/guardian ad litem "must act with reasonable diligence in the role of an advocate for the child, Wyo.R.Prof.Cond. 1.3, and participate as necessary in all phases of the process * * * Wyo.R.Prof.Cond. 1.14.").

Our decision in *Moore*, 809 P.2d 261, however, did not address other situations where the attorney's ethical duties under the Rules of Professional Conduct may not coincide with the duties expected of the guardian ad litem. The circumstances of this case clearly illustrate several examples of the problems which may arise. Here, the attorney/guardian ad litem represented three siblings, two of whom expressed conflicting preferences regarding custody. A guardian ad litem, not bound by the expressed preferences of the child, has no conflict in this situation. On the other hand, the Rules of Professional Conduct require the attorney to zealously represent the client's interests. Therefore, the attorney must discontinue representation when two clients' interests, and thereby the attorney's duty, diverge. Wyo. R. Prof. Cond. 1.2 and 1.7. Similarly, a conflict is present when the attorney/guardian ad litem does not believe the child's expressed interest is in the child's best interest.

The guardian ad litem is also required to inform the court of all relevant information. This expectation may often collide with Wyo. R. Prof. Cond. 1.6, which requires the attorney to maintain confidentiality unless the client consents to disclosure. In this case, Father's recording of the children's conversations with Mother also included a recording of one child's telephone call to the guardian ad litem. The attorney/guardian ad litem allowed this conversation to be admitted into evidence without objection and without the consent of the child.

Finally, the attorney/guardian ad litem is expected to actively participate as legal counsel for the children, i.e., presenting opening and closing statements and examining witnesses. In contrast, Wyo. R. Prof. Cond. 3.7 prohibits an attorney from participating as an advocate in a case where it is likely that he or she will be called to testify to a matter of import at the proceeding. In this case, the attorney/guardian ad litem not only testified regarding the ultimate issue in the case, but was the vehicle through which the taped conversations were admitted.

In those cases where the facts relevant to the children's best interests may not be otherwise presented to the court, the traditional role of guardian ad litem is essential. It is equally apparent that the skills of a legal advocate are invaluable to the child caught within a contentious custody dispute. With counsel, the child has an unbiased adult who can explain the process, inform the court of the child's viewpoint, and ensure an expeditious resolution. *See J.A.R. v. Superior Court in and for County of Maricopa*, 179 Ariz. 267, 877 P.2d 1323, 1331 (1994) ("a mental health professional * * * simply cannot assure that * * * all relevant information is properly investigated and introduced in an admissible fashion at trial, or that irrelevant or biased information is either kept out or cross-examined.").

While some jurisdictions have required the separation of these roles, a number of courts have declared the role a "hybrid," which necessarily excuses strict adherence to *some* rules of professional conduct. *In Interest of J.P.B.*, 419 N.W.2d 387, 391–92 (Iowa 1988); *In re Marriage of Rolfe*, 216 Mont. 39, 699 P.2d 79, 86–87 (1985), *aff'd* 234 Mont. 294, 766 P.2d 223 (1988). We believe that the costs attending the appointment of both an attorney and a guardian ad litem would often be prohibitive and would in every case conscript family resources better directed to the children's needs outside the litigation process. Thus, we too acknowledge the "hybrid" nature of the role of attorney/guardian ad litem which necessitates a modified application of the Rules of Professional Conduct.

Contrary to the ethical rules, the attorney/guardian ad litem is not bound by the client's expressed preferences, but by the client's best interests. If the attorney/guardian ad litem determines that the child's ex-

pressed preference is not in the best interests of the child, both the child's wishes and the basis for the attorney/guardian ad litem's disagreement must be presented to the court. *In re Marriage of Rolfe,* 699 P.2d at 86–87.

In the same light, the confidentiality normally required in the attorney-client relationship must be modified to the extent that relevant information provided by the child may be brought to the district court's attention. While it is always best to seek consent prior to divulging otherwise confidential information, an attorney/guardian ad litem is not prohibited from disclosure of client communications absent the child's consent. As legal counsel to the child, the attorney/guardian ad litem is obligated to explain to the child, if possible, that the attorney/guardian ad litem is charged with protecting the child's best interest and that information may be provided to the court which would otherwise be protected by the attorney-client relationship. Wyo. R. Prof. Cond. 1.2, 1.4 and 1.14.[5]

Although the above rules require compromise in order to effect the dual roles of attorney and guardian ad litem, we do not find the same need applies to Wyo. R. Prof. Cond. 3.7. Our holding in *Moore,* 809 P.2d 261 clearly mandates that the attorney/guardian ad litem is to be an advocate for the best interests of the child and actively participate at the proceedings. As counsel, the attorney/guardian ad litem has the opportunity and the obligation to conduct all necessary pretrial preparation and present all relevant information through the evidence offered at trial. Recommendations can be made to the court through closing argument based on the evidence received. It is, therefore, unnecessary to allow the attorney/guardian ad litem to place his or her own credibility at issue. Consequently, we join those jurisdictions which hold that an attorney/guardian ad litem may not be a fact

witness at a custody hearing. Colo.Rev.Stat. 14–10–116(2)(a) (1997); *S.S.,* 597 A.2d at 877; *Hollister v. Hollister,* 173 Wis.2d 413, 496 N.W.2d 642, 644–45 (1992).

This is not to say that the attorney/guardian ad litem may not submit a written report to the parties. A detailed report which timely informs the parties of the relevant facts and the basis of the guardian ad litem's recommendation may facilitate agreement prior to trial. If the parties so stipulate, the report may be presented to the court. However, the report should not be filed with the court or received into evidence without the express agreement of the parties. To the extent that prior Wyoming cases may conflict with this holding, they are here overruled.[6]

We find that the district court erred in admitting the testimony of the attorney/guardian ad litem. In turn, all evidence presented through this witness was also erroneously before the district court. Identification of the ethical impropriety surrounding the admission of this testimony does not, however, automatically require reversal. In *Moore,* 809 P.2d at 264, we held that an ethical violation, not brought about by the prevailing party, will be reversed only if it resulted in manifest injustice. In many district courts, it is not uncommon to allow the testimony of an attorney/guardian ad litem. Thus, in the absence of objection to the district court, we cannot say that the prevailing party in this case was responsible for the ethical violation. Therefore, we must determine whether the admission of the attorney/guardian ad litem's testimony and reports, as well as the tape recordings, resulted in manifest injustice under the totality of the circumstances. *Moore,* 809 P.2d at 264.

Manifest injustice "contemplate[s] a situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party." *McCarthy v. State,* 945 P.2d 775, 777 (Wyo.1997).

---

5. We recognize that in some instances a child may be too young to understand the purpose of the proceedings or the role of the attorney/guardian ad litem. However, in most cases, the information may be conveyed in an age-appropriate manner.

6. *Wilcox–Elliott v. Wilcox,* 924 P.2d 419 (Wyo. 1996); *Matter of Parental Rights to ARW,* 716 P.2d 353 (Wyo.1986); *Matter of Parental Rights of PP,* 648 P.2d 512 (Wyo.1982).

Here, the testimony of the guardian ad litem was clearly foreseeable. Father's pretrial memorandum designated the attorney/guardian ad litem to be called as a witness to testify "about all matters concerning custody * * *." Mother had received the initial report over a month before the trial, had sufficient time to prepare for the testimony, and made no objection to the designation or to the testimony at the hearing.

Further, the attorney/guardian ad litem was but one witness in a proceeding that continued for four days. Other than opinion testimony, her testimony was largely cumulative and involved her personal observations, as distinct from conversations with third parties. The testimony was also subject to cross-examination.

What is more difficult to assess is whether the lay opinion testimony of the guardian ad litem on the ultimate issues in the case was enhanced in the eyes of the district judge because she had served as advocate for the children's best interests. Indeed, the district judge specifically found that the testimony of the guardian ad litem, in every instance, was more credible than that of Mother. Our review is further complicated by the fact that the taped conversations, evidence which the district judge found "shocking," were admitted through this witness.

▇ After careful review of the record, and eliminating from consideration the opinions of the guardian ad litem and the contents of the tape recordings, we find that the record clearly supports the district court's determination that the best interests of the children were served by Father's continuing custody. In reaching his decision, the district judge noted specific examples of Mother's inability to cope with the eldest child during visitations and her refusal to credit Father's cooperation in scheduling visitations. The district judge also noted testimony that Father helped the youngest child write letters to Mother and permitted the children to telephone Mother long distance at Father's expense. The testimony of teachers and relatives established that the children were performing well in school and appeared to be happy in their present situation. On the other hand, Mother's witnesses equivocated on whether all the children would be better served by moving to Mother's residence. We find that the admission of the testimony of the attorney/guardian ad litem did not result in manifest injustice and, therefore, does not warrant reversal of the district court's custody determination.

### B. COSTS AND FEES

▇ Unlike the custody determination, we find no support in the record for the district court's order that Mother pay the costs and fees of Father's attorney and those of the guardian ad litem. The district court stated that the award of fees was based on "the extreme circumstances of this case * * *." Our review of the record leads to the firm conviction that the district court's determination as to fees and costs was founded solely on the contents of the tape recorded conversations. Because the tape recordings were not properly before the district court, and there is no other basis in the record to support the conclusion that Mother pay all fees, we reverse and remand this portion of the district court's order for reconsideration.

### V. CONCLUSION

The district court erred in admitting the testimony of the attorney/guardian ad litem. The error, however, does not warrant reversal of the district court's determination that Mother failed to show a change in circumstances which justified modification of custody. While the record before us substantiates the district court's decision regarding custody, the district court's award of fees is not supported. We, therefore, affirm the district court's award of custody and reverse and remand the issue of fees for reconsideration.