No. 86-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN RE THE MARRIAGE OF
CONNIE L. PRYOR,

Petitioner and Respondent,

and

GARLAND L. PRYOR,

Respondent and Appellant.

_____

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Julio K. Morales; Morales & Volinkaty, Missoula,
Montana

For Respondent:

P. Mars Scott; Mulroney, Delaney & Scott; Missoula,
Montana

_____

Submitted on Briefs: Sept. 4, 1986

Decided: December 30, 1986

Filed: DEC 30 1986

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Garland Pryor appeals a Missoula County District Court order which distributed the parties' marital estate and ruled that certain payments made by Garland to respondent Connie Pryor were maintenance payments. The issues on appeal are:

(1) Whether the court abused its discretion in dividing the marital estate between the parties;

a) whether the court erred in including the husband's vested retirement benefits in the marital estate and dividing them between the parties;

b) whether the court erred in valuing the husband's vested retirement benefits;

c) whether the court erred in including the employer's contributions to the retirement benefits in the marital estate;

d) whether the court erred in including certain assets in the marital estate.

(2) Whether the court erred in ruling that certain payments made by husband to wife were maintenance payments.

We affirm.

The parties were married in 1972 in Billings, Montana. No children resulted from their marriage. Connie has two daughters from a previous marriage. She works nine months a year driving a school bus and has gross annual earnings of approximately $7,500. Connie is approximately 39 years old.

Prior to and during the marriage, Garland worked as a federal air traffic controller. In 1983, his gross income was $36,576. In September 1985, Garland testified that if he were to retire then, he would receive $18,819 a year in

retirement benefits if he did not choose to reserve survivor benefits. If he reserved survivor benefits, he would receive $17,288 a year. Garland is approximately 56 years old.

In June 1984, Connie filed a petition for dissolution of marriage. Beginning in September 1984, Garland paid monthly sums to Connie to help pay her living expenses. The parties stipulated to the first payment and, thereafter, the District Court granted Connie's motion requiring Garland to continue paying monthly sums to her. The court reserved ruling on whether the payments would be regarded as maintenance or as prepayments of Connie's share of the marital estate.

The court held a hearing in September 1985, and issued an order in November 1985 dissolving the parties' marriage and distributing the marital estate. In February 1986, the court held another hearing on the valuation of Garland's vested retirement benefits. In March 1986, the court filed an order with a revised distribution of the marital estate. The second distribution is similar to the first but the retirement benefits are assigned a lower value. The court distributed the marital estate as follows:

|  | Connie | Garland |
| --- | --- | --- |
| Personal Property | $ 1,545 | $ 19,288 |
| Retirement Benefits (Present value) | 46,769 | 55,497 |
| East Missoula Residence | 51,000 | |
| Helena Acreage | | 8,800 |
| Honda 90 | | 235 |
| 1984 Tax Refund | 462 | 462 |
| FAA Credit Union | | 4,900 |
| Missoula Credit Union | | 900 |
| TOTAL | $ 99,776 | $ 90,082 |

The distribution plan provides that Garland will make semi-annual payments to Connie to pay for her share of the retirement benefits. Garland is to make semi-annual $4,000 payments to Connie at an interest rate of 10% until her share

3

is "cashed out". Garland appeals with the main issues being the division and valuation of his retirement benefits.

> The standard for reviewing the property division in a dissolution decree is well settled in Montana. The apportionment made by the District Court will not be disturbed on review unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice. (Citations omitted.)

Hurley v. Hurley (Mont. 1986) 721 P.2d 1279, 1285, 43 St.Rep. 1271, 1278.

Garland first attacks the inclusion of the present value of his retirement benefits in the marital estate. He claims that he should receive all of those benefits. We disagree. "It is well established in Montana that retirement benefits are classed as a part of the marital estate." In Re Marriage of Sirucek (Mont. 1985), 712 P.2d 769, 772, 42 St.Rep. 623, 627. The District Court found that Connie's contribution to the marriage was equal to Garland's. Substantial evidence supports that finding. Connie testified that she contributed monetarily to the marital relationship and performed the vast majority of the household chores. Her past contributions to the household entitle her to share in Garland's retirement benefits. See Marriage of Singer (Mont. 1986), 721 P.2d 755, 43 St.Rep. 1242.

The more troublesome issue involves the valuation of the retirement benefits. The parties' respective experts gave widely differing estimates of the present value of the retirement benefits. We note that present value is the proper test for valuing retirement benefits to be received in the future. Glasser v. Glasser (Mont. 1983), 669 P.2d 685, 689, 40 St.Rep. 1518, 1522. Garland's expert calculated that the present value of the retirement benefits, without

4

electing optional survivor benefits, was $62,352. He would include 65% of that amount ($41,464) in the marital estate because only 65% of the vested retirement benefits were attributable to the marital period. Thus, based on his calculations, Connie would receive $20,732 (one-half of $41,464) if the court awarded her half of the benefits earned during the marriage. In making his calculations, Garland's expert assumed that Garland would continue working for eight and one-half years, thus reducing the total benefits he would receive.

Connie's expert calculated the present value of the benefits by assuming that Garland was retired at the time of the hearing and could begin drawing the benefits then. Connie's expert testified that the present value of the retirement benefits was $150,671, if Garland chose the option with survivor benefits. He also testified that the present value for the option without survivor benefits would be about equal to the present value of the option with survivor benefits. Garland's expert gave a similar opinion on that point. Of the $150,671, approximately $100,904 would be attributable to Garland's work during the marriage and, thus, part of the marital estate. The difference in the experts' estimates of the present value of the retirement benefits stemmed from different assumptions of Garland's retirement date. Connie's expert assumed Garland was presently retired while Garland's expert assumed Garland would retire in eight and one-half years.

The District Court found the present value of the benefits earned during the marriage was $100,904 and divided that amount 55% - 45% with Garland receiving the larger share and Connie the smaller. The court also awarded $1,362 in

5

survivor benefits to Connie. We hold that there was no error in the valuation and division of the retirement benefits.

We uphold the court's valuation of the benefits because substantial credible evidence supports that valuation. The court accepted the opinion of Connie's expert, who was a certified public accountant. That opinion considered Garland's life expectancy and the probability of Connie's remarriage (which would affect the amount of benefits she receives). Moreover, Garland's own testimony supports the court's decision to use Connie's valuation (which assumes that Garland is presently retired) and not Garland's valuation (which assumes he will retire in eight and one-half years). Garland testified that he plans to work for ". . . a while. I don't know, a year or two, it just depends." There was no evidence he would work for over two more years, let alone eight and one-half years. Finally, the District Court did not err in including in the marital estate the employer's contributions to the retirement benefits. Those contributions are analogous to deferred compensation which Garland earned during the marriage. Those contributions are part of the marital estate just as his regular earnings are.

This Court, in Glasser v. Glasser (Mont. 1983), 669 P.2d 685, 689, 40 St.Rep. 1518, 1523, cited the following guidelines for the division of retirement benefits;

> . . . (1) The distribution should generally be based on the contributions made during the marriage. (2) The courts should continue to strive to disentangle the parties as much as possible by determining, where equitable, a sum certain to be paid rather than a percentage based upon expected future contingencies. (3) In determining whether a lump sum award is appropriate, courts should consider the burden it would place on the paying spouse in view of required child support, spousal support, and other property distribution. (4) Where courts determine

6

that the parties will share in the benefits on a proportional basis, the parties should also share the risks of future contingencies, e.g., death of the employe spouse or delayed retirement of the employe spouse, and payment should be to the receiving spouse as the employe spouse receives the retirement pay. (5) Courts should consider, where appropriate, an award of a portion of retirement benefits where other property awarded is not adequate to make an equitable distribution. (Citation omitted.)

The District Court considered these factors and acted accordingly. The court awarded Connie a lump sum of the benefits rather than a percentage of the benefits as received by Garland because the court found it was best to "disentangle" the parties. Moreover, the parties share the risks of future contingencies as those contingencies were considered in the estimate of present value.

We hold that the District Court equitably distributed the marital estate and did not abuse its discretion in making that distribution. The court made numerous and detailed findings supporting its property distribution. The court noted that Garland earned much more than Connie. Garland attacks the inclusion of certain assets in the estate. Without addressing this complaint in depth, we simply note that those assets were accumulated during the marriage. Connie's contributions to the household facilitated the accumulation of the assets and entitle her to share in them.

The last issue is the court's designation of certain payments made by Garland to Connie as maintenance. The court provided that Connie was not entitled to maintenance after the order distributing the marital property. Section 40-4-203(1), MCA, provides that a court may award maintenance to a spouse where that spouse "a.) lacks sufficient property to provide for his reasonable needs; and b.) is unable to support himself through appropriate employment or . . . "

7

Connie's testimony at trial establishes that she met those standards. Therefore, we hold that the court did not err in designating Garland's payments as maintenance. Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8