No. 86-420

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

IN RE THE MARRIAGE OF
ROBERT M. BOWMAN,

        Petitioner and Appellant,

  and

ROSE-MARIE BOWMAN,

        Respondent and Respondent.


APPEAL FROM: District Court of the Fourth Judicial District,
            In and for the County of Missoula,
            The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Datsopoulos, MacDonald & Lind; David B. Cotner,
        Missoula, Montana

    For Respondent:

        Terry A. Wallace, Missoula, Montana


              Submitted on Briefs:  Dec. 18, 1986

                  Decided: March 12, 1987

Filed:  MAR 12 1987

*Ethel M. Harrison*
——————————————————————————————
           Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant, Rose-Marie Bowman appeals from the property settlement and maintenance provisions of the findings of fact and conclusions of law and order entered in the Fourth Judicial District.

We reverse and remand to the District Court with instructions to enter judgment consistent with this Opinion.

The appellant raises several issues on appeal which we consolidate into the following five issues:

1. Whether the District Court acted arbitrarily and unreasonably by ordering appellant to make house payments and accept total responsibility for all costs should foreclosure occur when it also directed that respondent need not contribute to those payments or provide any maintenance to appellant even though the court's findings verify that appellant required such financial assistance.

2. Whether the District Court abused its discretion when it determined that the parties had abandoned their settlement agreement.

3. Whether the District Court abused its discretion when it denied appellant a proportionate share of respondent's pension.

4. Whether the District Court abused its discretion and acted arbitrarily without employment of conscientious judgment when it determined that actuarial tables do not consider individuals with health problems similar to respondent's and failed to use the actuarial tables in determining respondent's lifespan and consequential valuation of his retirement pension.

5. Whether the District Court acted unreasonably and arbitrarily when it instructed the parties to take turns choosing items of personal property.

Appellant, Rose-Marie Bowman, and defendant, Robert M. "Mike" Bowman were married in 1956. Rose-Marie was 18 and had graduated from high school. Mike was 21 and attending classes at the University of Washington from which he received a B.S. in forestry in 1959. Between 1958 and 1966 the couple had 5 children. One died in infancy. Of the other four children, three were emancipated adults at the time of trial. The youngest, Kelly, age 18, was living with his mother while he completed high school.

Throughout most of their marriage Rose-Marie did not seek employment outside the home. She and Mike agreed that it would be best for the family to have her at home. She did, however, work at various times when the family needed her additional financial support. Due to Mike's career and service in the Army, the family moved to many different locales including New York, Texas, Alaska, California, Idaho and Washington, D.C. In 1979, the family moved to Missoula, Montana, where Mike worked for the forest service and Rose-Marie worked fulltime as a secretary at the University. She continues to work there in a managerial position. In 1981, Mike suffered a stroke and Wallenburg's Syndrome. He returned to fulltime work within a year. He continues to experience some symptoms such as difficulty reading fine print and instability of equilibrium and balance. In the spring of 1985, after 29 years of marriage, Mike and Rose-Marie separated. Mike moved out. Rose-Marie and their youngest son, Kelly, remained in the family home. On April 1, 1985, the parties entered into a separation agreement which provided for financial arrangements such as their tax refund distribution and the payment of debts, loans and

monthly accounts. Also, Mike agreed to pay $1,300 per month toward Rose-Marie's expenses which included the house payment and providing food, shelter and clothing for Kelly. The agreement was to have remained in effect until replaced by other formal legal documents. Although not replaced by other formal legal documents, Mike discontinued payments in July, 1985. When Mike stopped his contributions Rose-Marie was unable to meet the monthly house payments.

Mike retired from his employment in September, 1985. His position had been abolished in Missoula. He chose to retire rather than relocate and be away from his family. At the time of the trial Mike was unemployed but seeking employment as a fire control consultant, a position which pays approximately $100 per day. Mike's monthly expenses total $1,705. His retirement benefits total $1,861 per month if a deduction is made for survivor's benefits in Rose-Marie's name and $2,043 without survivor's benefits. The purpose for the survivor's benefits was to protect Rose-Marie and enable her to meet the parties' monthly debt on their real property in the event of Mike's death. The District Court found that the benefits were too expensive and could be reasonably provided from another source. The court ordered that Mike provide insurance equal to the survivor's benefits until the parties' real property was sold.

Rose-Marie's monthly take home pay is $1,445.89. Her monthly expenses are $2,676.63. The District Court valued Mike's pension at $249,900, basing this calculation upon an estimated lifespan of 11.54 years. It valued Rose-Marie's pension and retirement plans at $6,733, as it will not mature until she reaches age 50. The District Court ordered Mike to make support payments in the amount of $300 per month until June, 1985, at which time Kelly would graduate from high school. The court found Mike able to pay this sum.

It is clearly established in Montana that this Court will not disturb a lower court's findings of fact and conclusions of law unless they are found to be "clearly erroneous." Carr v. Carr (Mont. 1983), 667 P.2d 425, 427, 40 St.Rep. 1263, 1265, and determines that the lower court "acted arbitrarily without employment of conscientious judgment, or exceeded the bounds of reason in view of all the circumstances." In Re the Marriage of Jorgensen (1979), 180 Mont. 294, 299, 590 P.2d 606, 609.

The discretion of the District Court is very broad. "We will not substitute our judgment for the trier of fact. . . We will view the evidence in a light most favorable to the prevailing party, recognizing that substantial evidence may be weak or conflicting with other evidence yet still support the findings." Wallace v. Wallace (1983), 203 Mont. 255, 259, 661 P.2d 455, 457 citing in re Marriage of Bosacker (1980), 187 Mont. 141, 145, 609 P.2d 253, 256.

I.

On appeal, Rose-Marie raises the issue of whether the District Court acted arbitrarily and unreasonably by first finding that she required maintenance, but not awarding any to her and second, that she take full responsibility for the parties' monthly house payments.

After determining an equitable property distribution as provided for in § 40-4-202, MCA, the court may award maintenance if the spouse seeking maintenance "(a) lacks sufficient property to provide for [her] reasonable needs; and (b) is unable to support herself through appropriate employment. . ." Section 40-4-203(1)(a)(b), MCA. If a court determines that a spouse meets these requirements, as it did in this case, it must consider several additional requirements, including "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those

- 5 -

of the spouse seeking maintenance." Section 40-4-203(2)(f), MCA. The language of § 40-4-202, MCA and 40-4-203, MCA intertwines an award of maintenance with the distribution of marital property.

In this case, the District Court ordered that the parties' real property be sold and the proceeds divided with 4/5 going to Rose-Marie, 1/5 to Mike. Rose-Marie was held responsible for the family house payments up until the time it was sold and ordered to pay Mike the value of his equity in the house should it be foreclosed upon. In its findings, the court credits this order to the fact that Mike is in poor health and his potential for future employment should not be considered in light of others of his age and experience.

The District Court considered Mike and Rose-Marie's 29 years of marriage and found that the marital contributions of each party were equal. The marital estate was distributed as follows:

|  | Mike | Rose-Marie |
| --- | --- | --- |
| Real Property | $ 9,088.00 | $ 36,352.00 |
| Personal Property | 11,452.50 | 11,452.50 |
| Mike's Pension | 249,900.00 | |
| Rose-Marie's Retirement Pension | | 6,733.00 |
| Rose-Marie's Annuities | | 7,481.00 |
| | $270,470.50 | $ 62,048.50 |

The record shows that the District Court thoroughly considered the statutory requirements and found that Rose-Marie did meet the maintenance requirement under § 40-4-203, MCA, even after the distribution of property. However, the court found further that Mike was unable to pay any maintenance due to his health and potentially fixed income. Without employment Mike's expendable income every month is approximately $338.00. Rose-Marie's monthly expenses exceed her monthly income by approximately

$1,230.74. The District Court did not necessarily abuse its discretion by distributing the marital property as it did and by not awarding a maintenance allowance to Rose-Marie. A seemingly disproportionate distribution, with or without an award of maintenance, must be considered in light of the overall property distribution, the requirements of § 40-4-202 and § 40-4-203 and whether there is substantial credible evidence to support the District Court's division.

## II.

In this case, the crux of whether the entire property division is equitable and not an abuse of the court's discretion rests on whether the District Court clearly abused its discretion by concluding that the parties' April 1, 1985 separation agreement was abandoned by both parties as of July 1, 1985. The record shows no evidence to suggest that the agreement was, in fact, abandoned by the parties. The record does show that Mike breached the agreement by failing to make bi-monthly payments of $650 as the parties agreed was necessary to make house payments and meet other expenses of Rose-Marie and Kelly. The record also shows that Rose-Marie continued to rely on the terms of the agreement through August, 1985. The agreement specifically states that it is to be in effect until it is replaced by other formal legal documents. No such documents had replaced the agreement at the time of trial.

Section 40-4-201(4)(a), MCA, provides that unless the court finds a separation agreement unconscionable or unsatisfactory as to disposition of property or maintenance and unsatisfactory as to support, the terms "shall be set forth in the decree of dissolution . . . and the parties shall be ordered to perform them." The District Court found the agreement neither unconscionable nor unsatisfactory in any way. The court simply concluded that "The April 1, 1985

agreement between the parties should not be considered in the equitable division of the marital estate, as both parties had abandoned it as of July 1, 1985." The statutory divisions found in the Uniform Marriage and Divorce Act were developed to protect such settlement contracts. It is the duty of the courts to acknowledge and enforce these contracts barring any statutorily provided exceptions.

The District Court clearly abused its discretion when it concluded that the parties abandoned their separation agreement and failed to incorporate it into the findings of facts, conclusions of law and order.

The real property division was critical to the overall property distribution in this case. If Rose-Marie had been awarded the family home with some feasible arrangement enabling her to make house payments, it would have been a valuable asset. Instead, the court awarded her a piece of property which was about to be foreclosed upon and ordered her to reimburse Mike upon foreclosure for any equity which he had acquired in the house. Rose-Marie's inability to make the house payments was due to Mike's breach of the parties' separation agreement. The effect of the court's order was to diminish Rose-Marie's share of the real property distribution from $36,352 to $21,852, making the "equitable" distribution of property between the parties even more unequal and placing full responsibility for a default upon Rose-Marie. When a court finds the parties' contribution to the marriage was equal, as it did in this case, it does not mean that the marital estate must be divided equally. Kowis v. Kowis (1983), 202 Mont. 371, 378, 658 P.2d 1084, 1088. Section 40-4-202, MCA, does not mandate equal distribution. As long as the court considers the statutory requirements, bases its findings and conclusions on credible evidence on record and does not clearly abuse its discretion or act arbitrarily and

unreasonably, the findings and conclusions of the lower court will not be disturbed. By concluding that the parties' separation agreement of April 1, 1985 (which provided for maintenance to Rose-Marie) was abandoned; by distributing the marital estate 4 to 1 favoring Mike; by ordering Rose-Marie fully responsible for the family home payments and liable to Mike for his equity in the house upon default; and by not providing for any maintenance to make these payments after finding that she was in need of such maintenance, the District Court clearly abused its discretion by acting in an unreasonable and arbitrary manner.

III.

The next issue raised by Rose-Marie is whether the District Court abused its discretion by not awarding Rose-Marie a portion of Mike's retirement pension.

When considering Mike's retirement pension, the Court properly included it in the marital estate. "It is well established in this state . . . that retirement benefits are part of the marital estate." In Re Marriage of Rolfe (Mont. 1985), 699 P.2d 79, 83, 42 St.Rep. 623, 627. As a part of the marital estate to which both parties have been found to have contributed equally, the pension does not have to be distributed equally. As long as the lower court considers the requirements outlined in § 40-4-202, it has broad discretion to equitably apportion the individual assets. The trial court may not have abused its discretion by not awarding any of Mike's pension to Rose-Marie. It may, however, need to reconsider the total property distribution on remand, in light of the above discussion concerning the separation agreement and maintenance.

In Glasser v. Glasser (Mont. 1983), 669 P.2d 685, 689, 40 St.Rep. 1518, 1523, this Court cites ways in which

- 9 -

retirement benefits can be analyzed in terms of equitable distribution.

> For example: 1) The distribution should generally be based on the contributions made during the marriage. 2) The Courts should continue to strive to disentangle the parties as much as possible by determining, where equitable, a sum certain to be paid rather than a percentage based upon expected future contingencies. 3) In determining whether a lump sum award is appropriate, courts should consider the burden it would place on the paying spouse in view of required child support, spousal support, and other property distribution. 4) Where courts determine that the parties will share in the benefits on a proportional basis, the parties should also share the risks of future contingencies, e.g., death of the employe [sic] spouse or delayed retirement of the employe spouse, and payment should be to the receiving spouse as the employe spouse receives the retirement pay. 5) Courts should consider, where appropriate, an award of a portion of retirement benefits where other property awarded is not adequate to make equitable distribution. Citing Matter of the Marriage of Rogers and Rogers (Ore. 1980), 609 P.2d 877, 882-883.

Intertwined with the division of the pension is the issue of whether the court abused its discretion by ordering survivor's benefits or other "equal insurance" to be provided for Rose-Marie only until the parties' real property is sold. The record does not show any testimony or other evidence that $182.00 per month for survivor's benefits is "too expensive." Nothing on the record indicates that a comparable annuity could be purchased for less. To terminate Rose-Marie's survivor's benefits jeopardizes her 29 year investment in the marital estate. The District Court found that Rose Marie relied upon the fact that Mike's retirement plan continued to grow when she made plans regarding her own retirement. By awarding Mike his full pension and ordering Rose-Marie's

- 10 -

survivor's benefits terminated, the court effectively destroyed Rose-Marie's retirement plans.

Upon remand we suggest that the District Court, in its discretion, reconsider the division of the pension and survivor's benefit in light of its finding that the parties contributed equally to the marital estate and in consideration of the fact that upon dissolution the parties should receive equitable treatment from the court.

## IV.

Rose-Marie raises an additional issue as to whether the District Court abused its discretion and acted arbitrarily without employment of conscientious judgment when it valued Mike's pension at $249,900.

The proper test for determining the value of a pension is present value. Kis v. Kis (1982), 196 Mont. 296, 639 P.2d 1151. In Kis, this Court acknowledged that the value of the retirement benefits may be effected by the contingency of failing to reach the levels used by the court. 639 P.2d at 1153. To aid the court in valuing Mike's pension, both parties retained the same expert witness to make the technical calculations. In its findings, the lower court seemingly disregarded this witness' testimony and instead used an 11.54 year expected lifespan. The court derived this number by taking the 2.5 increase of Mike's life insurance policy and dividing it into the actuarial table's expected lifespan of 28.84 years. Although, on its face, this calculation may seem logical, the record shows that it is not substantiated by any sound, traditionally used present value determinations. While the use of actuarial tables necessarily involves speculation regarding the number of years a specific individual will live, these tables, based on nationwide statistics, offer the most reliable method for arriving at a specific figure regarding life expectancy. The

District Court found that the actuarial tables failed to consider individuals with health problems similar to Mike's. Based on the record, it is not an abuse of the court's discretion to make such a finding. It is, however, an abuse of discretion to arbitrarily pick a method of calculation which enjoys no support from the record and, in fact, is refuted by both parties' expert witness as very speculative. Whether the court takes judicial notice of the actuarial tables and consequentially relies upon them as accurate for a person of Mike's age and health falls under the discretion of the District Court judge. However, the court is required to justify its use of a particular method and select a method of calculation in a less arbitrary manner than that which it employed.

## V.

The final issue raised by Rose-Marie is whether the District Court acted unreasonably and arbitrarily when it instructed the parties to take turns chosing personal property. Although the parties had already agreed to a division of these personal property items, it is not an abuse of the court's discretionary power to select a different method for distribution. There is no allegation that the distribution is unconscionable or unfair. If carried out by the parties it can result in a 50/50 equitable division which is not unreasonable or arbitrary.

## VI.

The District Court ordered that Mike pay six months of child support in the amount of $300 per month for the support of the parties' 18 year year old son, Kelly. On appeal, Mike contends that because Kelly is legally an adult, he is not obligated to make these payments. Section 40-4-208(5), MCA, provides as follows: "Unless otherwise agreed in writing or expressly provided in the Decree, provisions for the support

of a child are terminated by emancipation of the child . . . ." This statute clearly empowers the District Court to provide in the conclusions of law and order that the support of the child may be extended beyond the age of emancipation. Awarding $300 per month child support to Rose-Marie through June, 1985, when Kelly would graduate from high school, is totally within the bounds of the court's power.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 13 -