No. 88-223

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN RE THE MARRIAGE OF
BEVERLY C. ROLFE,

        Respondent and Petitioner,

   and

OLIVER W. ROLFE,

        Appellant and Respondent.

'88 OCT 14 PM 4 49
MONTANA SUPREME COURT
CLERK
FILED

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

      Fred Thomson, Missoula, Montana

   For Respondent:

      Rebecca Summerville; Datsopoulos, MacDonald & Lind,
Missoula, Montana

---

Submitted on Briefs: Sept. 1, 1988

Decided: October 14, 1988

Filed:

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Fourth Judicial District Court, Missoula County, Montana. Appellant Oliver Rolfe appeals the District Court's denial of an award of child support from the respondent and its valuation of his retirement benefits. We affirm on both issues.

This case is presented to us after remand with instructions on the property distribution. See, Rolfe v. Rolfe (Mont. 1985), 699 P.2d 79, 42 St.Rep. 623. While our remand instructions focused on a number of inequities in the property division, the present appeal concerns only the proper valuation of Oliver Rolfe's retirement benefits. A brief set of facts will be discussed in this opinion.

Beverly Rolfe (hereinafter wife) and Oliver Rolfe (hereinafter husband) were married in 1968 and divorced in 1983. They have two sons, Jonathan and Alexander. Sole custody of the children was awarded to husband, with supervised visitation for wife. The husband has a Ph.D. in Romance Linguistics and is a tenured professor at the University of Montana. Husband has been employed with the Montana University System since 1971, and in conjunction with his employment, contributes to the Montana Teachers' Retirement System. Husband, at the time of the dissolution, had an average yearly salary of $28,484.

Wife was a homemaker throughout the marriage. She has a B.A. in Education and taught for several years prior to the marriage. On remand, the District Court found that although wife could acquire the necessary quarter credits to gain a teaching certificate, the surplus of elementary school teachers in Missoula and keen competition for available jobs made such employment problematic. In wife's current job as a

2

medical transcriptionist she earns approximately $11,000 annually. The maximum wage available in the field is approximately $15,288 annually. In addition, wife would like to gain employment in the legal secretarial field. Because of the limited teaching positions in Missoula, the greater opportunities in the legal secretarial and medical transcriptionist fields and insignificant wage differences, the District Court found wife's plan for training and employment reasonable.

On remand, the District Court heard substantial evidence from experts regarding the proper valuation of the retirement benefits, as per our instructions. From this evidence, the lower court made extensive findings, concluding the retirement benefits should be divided according to a formula, as they are received.

The husband raises two issues on appeal. First, husband attacks the pension valuation, asserting the trial court impermissibly included non-marital assets in the valuation. Second, husband argues the lower court erred in refusing to award child support to be paid by wife.

Issue No. 1: Pension Valuation

The husband's first issue focuses on the proper valuation for retirement benefits. It is well established in this state that retirement benefits are a part of the marital estate. Karr v. Karr (Mont. 1981), 628 P.2d 267, 38 St.Rep. 506. The question is what value to assign to the pension for proper division of the marital asset. While we attempted to give instructions in our previous decision, we recognize such assets contain numerous contingencies, thereby avoiding categorical formulas.

To begin our decision, an in depth review of the specific retirement plan is in order. The Montana Teachers'

3

Retirement System (hereinafter MTRS) plan provides for both employee and employer contributions, 7.044% and 7.428% respectively, based upon the rate of salary earned each month. The plan benefits become a vested right after five years of full-time service in Montana for which contributions have been made. Benefits are computed according to a formula:

$$\text{Annual Benefit} = \frac{\text{Creditable Service}}{60} \times \text{Average Final Compensation}$$

The annual retirement benefit is paid in twelve equal monthly installments. The average final compensation value is the highest average of earned compensation during three consecutive years of full-time service.

Once an employee ceases teaching in Montana, he may apply for benefits. Benefits are payable in full after 25 years of service, regardless of age. However, an employee with less than 25 years of service can retire as early as age 50, at a reduced benefit. The normal retirement age is 60. The reduction is .5% for each of the first 60 months the retirement date precedes age 60 or 25 years of service, and .3% for each additional month. At trial, experts testified Dr. Rolfe's benefits would be reduced 37.2% if he were to retire at age 50. In addition, the MTRS plan does not provide for lump sum distribution of benefits prior to age 50. An employee may, however, obtain a refund of employee contributions upon withdrawal from the plan.

Generally, the proper test for determining the value of a pension is the present value. In re Marriage of Bowman (Mont. 1987), 734 P.2d 197, 203, 44 St.Rep. 488, 494. Given the various contingencies, however, present value may not be adequate to value the asset. For instance, our earlier decision instructed the District Court to not only consider

4

the amount of husband's contributions, but also to consider nonvested pension benefits in the form of employer's future contributions. Rolfe, 699 P.2d at 83. These nonvested amounts are analogous to deferred compensation which the husband earned during the marriage. In re Marriage of Pryor (Mont. 1986), 731 P.2d 895, 898, 43 St.Rep. 2358, 2361. The employer's future contributions, like husband's contributions, are a factor of monthly salary, an amount which could not accurately be determined. In addition, the plan's reduced benefit formulation varies significantly with the individual. Numerous other contingencies associated with retirement benefits, including early retirement or disability, are equally elusive of accurate calculation.

Rather than attempt to project each individual contingency, the District Court developed a formula to divide the pension benefits:

$$\frac{\text{Years of Service During Marriage}}{\text{Years of Total Service}} \times \frac{\text{Monthly Benefit}}{\text{(after taxes)}} \times 1/2$$

The division of retirement benefits upon receipt is commonly known as the "time rule" and was mentioned in our earlier decision via citation to In re Marriage of Brown (Cal. 1976), 544 P.2d 561. See, Rolfe, 699 P.2d at 83. Under this method, the marital interest is represented by a fraction, the numerator of which is the length of the employee's service during the marriage, and the denominator is the employee's total length of service. This fraction is then applied to each benefit payment, lump or periodic, to determine the portion earned during the marriage. Although the extent of the marital interest is determined as of the date of the dissolution, the benefit factors to be applied to the pension credits earned during the marriage are those in effect at retirement. Thus, the non-employee spouse is entitled to increases or accruals on her interest because of

5

the delay in receiving those payments. McNamara, <u>Dividing</u> <u>Pension</u> <u>Benefits</u> <u>Upon</u> <u>Divorce</u>, ALI-ABA Course Materials Journal, No. 2, 33, 42 (1983).

Husband argues this formula impermissibly includes non-marital property in the form of future employee contributions, and does not finally apportion the marital estate. Husband would urge this Court to value the pension as of the date of dissolution, yet suspend payment until he retires. This position is flawed in three respects. First, the monthly pension benefit is not determined by the amount of contributions, but instead by the highest average salary earned over three consecutive years. Therefore, the only amounts which could arguably be called post-marital property are possible salary increases received prior to retirement. As the husband's expert testified at trial, Dr. Rolfe historically received a 3% increase each year. The trial court expressly excluded any amounts unique to husband, such as merit pay raises. Second, each party is well aware of their respective percentage of pension benefits: the fraction represents the marital interest. Third, to value payments now, without also demanding an immediate cash payment to wife, would result in an unfair windfall to husband. Wife could easily earn over 3% were she able to invest the money immediately. Certainly husband recognizes the inequity in a delay without corresponding interest.

Husband also claims the order effectively binds him to continued employment with the University, and in turn, MTRS plan. This Court fails to see the basis of husband's argument. On the contrary, the judgment allows Dr. Rolfe continued volitional choice. As part of its detailed findings, the District Court included numerous applications intended to illustrate possible status changes, including early retirement, disability, death or retirement after age

6

60 (normal age). The formula adopted allows the parties to share the risks while protecting wife's interest.

The judgment is not unusual. As cited above, the California Supreme Court recognized the difficulties associated with pension valuation, stating:

> [I]f the court concludes that because of uncertainties affecting the vesting or maturation of the pension that it should not attempt to divide the present value of pension rights, it can instead award each spouse an appropriate portion of each pension payment as it is paid. This method of dividing the . . . interest in the pension renders it unnecessary for the court to compute the present value of the pension rights, and divides equally the risk that the pension will fail to vest.

Brown, 544 P.2d at 567. Additional guidelines as to division of the pension may be found in earlier cases, including In re Marriage of Glasser (1983), 206 Mont. 77, 85, 669 P.2d 685, 689, quoting Matter of the Marriage of Rogers and Rogers (Or. 1980), 609 P.2d 877, 882-883, stating that:

> (1) The distribution should generally be based on contributions made during marriage. (2) The courts should continue to strive to disentangle the parties as much as possible by determining, where equitable, a sum certain to be paid rather than a percentage based upon expected future contingencies. (3) In determining whether a lump sum award is appropriate, courts should consider the burden it would place on the paying spouse in view of required child support, spousal support, and other property distribution. (4) Where courts determine that the parties will share in the benefits on a proportional basis, the parties should also share the risks of future contingencies, e.g., death of the employe[e] spouse or delayed retirement

7

of the employe[e] spouse, and payment should be to the receiving spouse as the employe[e] spouse receives the retirement pay. (5) Courts should consider, where appropriate, an award of a portion of retirement benefits where other property awarded is not adequate to make an equitable distribution.

The findings illustrate the District Court's complete understanding of the situation. The distribution is beneficial to both parties, providing for wife's security in later years without a reduction in needed current income, and suspending a burdensome cash payment. While husband may argue such continued jurisdiction is inappropriate, we point to the much more onerous task of maintenance supervision, a burden continually accepted by the district courts. Brown, 599 P.2d at 568. More to the point, there appears to be no alternative to effect a division of the MTRS benefits, given the mechanics of the plan, nature of the property and desires of the parties. The lower court may, therefore, retain jurisdiction to supervise the implementation of the order when the employee retires. See, Johnson v. Johnson (Ariz. 1981), 638 P.2d 705; Shill v. Shill (Idaho 1979), 599 P.2d 1004.

The District Court is granted substantial discretion to devise a method to accomplish an equitable distribution. In re Marriage of Johnsrud (1977), 175 Mont. 117, 122, 572 P.2d 902, 905. In this case, the District Court saw numerous problems and developed a reasonable alternative supported by very detailed findings. We see no abuse of discretion.

Issue No. 2: Child Support

Husband also challenges the District Court's denial of child support, arguing the lower court failed to consider the statutory criteria. Husband also points to our Uniform Child

8

Support Guidelines (Mont. 1987), 44 St.Rep. 828, claiming only a parent mentally or physically incapacitated will be excused from paying child support. Not only do the adopted guidelines make no such conclusion, but expressly state the guidelines are not binding on judges to prevent appeals based on a claimed failure to observe the recommendations. Their major purpose is to produce a uniform and equitable approach to the statutory standard.

Section 40-4-204(1), MCA, states the factors the District Court must consider in an award of child support, including:

> (a) [T]he financial resources of the child;
>
> (b) the financial resources of the custodial parent;
>
> (c) the standard of living the child would have enjoyed had the marriage not been dissolved;
>
> (d) the physical and emotional condition of the child and his educational needs;
>
> (e) the financial resources and needs of the noncustodial parent . . .

However, if the court does not order a parent to pay child support, it must state the reasons for doing so. Section 40-4-204(2), MCA. From the District Court's numerous findings, we list a few to illustrate the thorough consideration given to the statutory factors:

> 58. Bev's monthly expenses exceed her monthly income by $200 per month.
>
> 59. Wil is a tenured professor currently under a ten-month contract at the University of Montana and earned a gross annual salary of $28,484 at the time of the dissolution.

60. Wil is not under contract for the two summer months and he could seek employment during that time.

. . .

64. Wil's yearly income is over two times Bev's yearly income.

65. Considering the . . . increase in Wil's expenses attributable to the children and his substantially larger income, the needs of the children can be met without the payment of support by Bev. There will not be a reduction in the standard of living experienced by the children and Bev will be in a better position to meet her financial obligations.

66. Bev has only minimal ability to acquire future assets.

67. Wil does have the ability to acquire future assets because of his admitted astute business skill. . .

In support of his argument, husband points only to the increase in expenses attributable to his custody of the children. But as the statute makes clear, expense is not determinative. Considering each parties' financial positions, current and future, and the standard of living enjoyed by the children, the District Court found an award of child support inapplicable.

The decree of the District Court clearly indicates all the statutory factors were considered. Child support awards will not be disturbed on appeal unless there has been a clear abuse of discretion resulting in substantial injustice. In re Marriage of Alt (Mont. 1985), 708 P.2d 258, 261, 42

10

St.Rep. 1621, 1626.  We find no abuse of discretion on this issue.

Affirmed.

_John Conway Harrison_
Justice

We concur:

_S. A. Turnage_
Chief Justice

_Gerald J. Weber_

_John C. Sheehy_

_R. C. Gulbrandson_

_R. C. McElroy_

_William E. Hunt Sr._
Justices