No.   94-535

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

TANYA TRUAX,

Petitioner and Appellant,

and

H. V.  "BILL" TRUAX,

Respondent and Respondent.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Stephen C. Berg, Warden, Christiansen,
Johnson & Berg, Kalispell, Montana

For Respondent:

Marshall Murray and Shelly F. Brander,
Murray and Kaufman, Kalispell, Montana

Submitted on Briefs:   March 23, 1995

Decided:   April 26, 1995

FILED

Filed:   APR 26 1995

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Petitioner Tanya Truax petitioned the District Court for the Twentieth Judicial District in Lake County for dissolution of her marriage to respondent, H.V. "Bill" Truax, and for equitable division of the couple's property. The District Court entered a decree in which it dissolved the parties' marriage, and distributed certain assets to each. Tanya appeals from the District Court's property distribution. We affirm the decree of the District Court.

The following issues are raised on appeal:

1. Did the District Court abuse its discretion by its apportionment of the pension funds earned by Bill from Frontier Airlines?

2. Did the District Court err when it included Tanya's Glacier Bank account in the marital estate?

### FACTUAL BACKGROUND

Bill and Tanya were married on November 20, 1980, in Kalispell. Tanya had worked as a teacher in North Dakota prior to the parties' marriage, but quit her teaching position and withdrew the retirement funds she had earned when she married Bill. Tanya moved to Kalispell with Bill, helped care for two of his children from a prior marriage, and helped maintain the couple's home. In 1989, she returned to work as a teacher. At the time of trial, she earned $27,000 annually in that occupation.

Bill worked as a pilot for Frontier Airlines from 1962 until 1986. During that employment, Frontier contributed to a pension fund on his behalf.

In 1986, Frontier Airlines declared bankruptcy. For several years afterward, Bill worked for other airlines. However, he received no additional contributions to any retirement plan. He retired from flying in 1992. Tanya and Bill separated in April 1994. At the time of trial, she was 46 and he was 61 years old.

Bill's Frontier pension was distributed in a lump sum amount of $328,916.12 on December 26, 1989. The funds were then divided into two IRAs. One was deposited at BankWest, and the other at D.A. Davidson. There were withdrawals from the pension funds during the marriage for living expenses and for construction of a new home. At the time of trial, the total amount remaining in the two IRAs was $267,358.

Bill testified that he is now unable to fly commercially because he is over age 60, and is retired. Tanya testified that she is now employed as a tenured teacher earning approximately $27,000 per year.

The parties agreed on the distribution of marital assets, with the exception of Bill's Frontier Airlines pension. They also disagreed on the question of whether Tanya's Glacier Bank account should be designated a marital asset.

Johnnie **McCann,** a CPA retained by Tanya, testified that the value of Bill's retirement at the time of the marriage was approximately $32,000, based on figures obtained from a loan application. However, she admitted that she was unable to obtain third-party documentation of the actual value. She arrived at the amount earned during the marriage by subtracting $32,000 from the current balance. Tanya contended that one-half of that balance was the share of Bill's pension to which she was entitled.

Tom Torgenson, a CPA retained by Bill, valued the pension by taking the total number of months Bill was employed at Frontier (291), and dividing that number by the number of months Bill was employed by Frontier during the marriage (69). The result was 23.7 percent. He thereby concluded that 23.7 percent of the pension was earned during the marriage. It was and is Bill's contention that Tanya is entitled to one-half of that amount, but that the remaining amount is a pre-marital asset. The District Court agreed. It distributed approximately $32,000 of the pension balance to Tanya.

The District Court also designated a Glacier Bank account as a marital asset, but awarded the entire account to Tanya. Tanya testified that of the $15,587 in the account, $10,000 was a gift to her from her father and the remainder belonged to a Canadian friend.

4

## ISSUE 1

Did the District court abuse its discretion by its apportionment of the pension funds earned by Bill from Frontier Airlines?

When we review a district court's division of marital property, we will uphold the district court unless the findings upon which that division is based are clearly erroneous or there has been an abuse of discretion. *In re Marriage of Maedje* **(1994) , 263** Mont. 262, 265-66, 868 P.2d 580, 583.

Retirement benefits are part of the marital estate. *Rolfe v. Rolfe* (1988), 234 Mont. 294, 296, 766 P.2d 223, 225 (citing *Karr v. Karr* (1981), 192 Mont. 388, 628 P.2d 267). The question is how to equitably divide those benefits.

In this case, the court heard testimony from the parties' experts, both of whom are certified public accountants, regarding the value of the pension earned during the marriage. Tanya's valuation depended on the assumption that the pension had a value of $32,000 on the date of the couple's marriage. However, that amount came from a loan application which Bill had not signed and which was based on a figure that he stated he had not provided. He testified that he did not know the actual value at the time of the couple's marriage, and neither party was able to provide independent confirmation of that value. Under these circumstances, it was not unreasonable for the District Court to rely on the testimony of Bill's accountant and apportion benefits based on the

*5*

**time** rule approved (for other reasons) in *Rolfe*, *766* P.2d at 226. Applying that formula, "the marital interest is represented by a fraction, the numerator of which is the length of the employee's service during the marriage, and the denominator is the employee's total length of service." *Rolfe*, *766* P.2d at 226.

The dissent contends that Bill's pension should have been distributed based on its present value without regard to the time rule. However, an equitable apportionment of the pension based **merely** on its present value would require some determination of the value accumulated during the marriage. While the dissent makes the factual argument that the value at the time of marriage should be found based on an unsigned financial statement, the accuracy of which could not be established, it was the District Court's responsibility to resolve the factual issue created by this circumstantial evidence and Bill's denial that he knew the value of the pension at the time of marriage. The dissent would have us disregard the District Court's fact-finding function, and establish our own value for the pension on the date of marriage. However, doing so would not only require that we ignore the limited scope of our review, but also that we assume that during the first 18 years of contributions to Bill's pension, he earned only $32,000, but that during the next six years of contributions, plus three years of interest, he earned nearly $297,000. The implausibility of this assumption supports its rejection by the District Court.

*6*

While it is true, as pointed out by the dissent, that *Rolfe* adopted the **time** rule based upon contingencies that affected the value of a party's pension after the marriage, the rule is equally applicable in this case where the District Court had no reliable evidence with which to evaluate the pension at the beginning of the parties' marriage.

We conclude that substantial credible evidence supports the District Court's apportionment of Bill's retirement benefits. The District Court's findings were not clearly erroneous, and it did not abuse its discretion by the manner in which these benefits were distributed.

<u>ISSUE 2</u>

Did the District Court err when it included Tanya's Glacier Bank account in the marital estate?

Tanya claims that the Glacier Bank account contained only money that was a gift to her from her father and money which she was holding for a Canadian friend, and should not have been designated as a marital asset. However, the District Court awarded the entire amount in the Glacier Bank account to Tanya, even though it was designated a marital asset. We have held that dissolution decrees will not be reversed for error which does not materially affect the substantial rights of the parties. *In re Marriage of Dreesbach* (1994), 265 Mont. 216, 226, 875 P.2d 1018, 1024 (citing *In re Marriage of Lopez* (1992), 255 Mont. 238, 245, 841 P.2d 1122, 1126). Since the parties agree upon the distribution of all assets other than Bill's

retirement benefits (which we have affirmed were distributed equitably), and since the Glacier Bank account was distributed to Tanya in its entirety, regardless of its classification, we conclude that Tanya's substantial rights were not affected by any misclassification that might have occurred. While the dissent disagrees with this resolution of our second issue, it offers no explanation of how Tanya's substantial rights were adversely affected by the District Court's disposition of her bank account.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

Justice James C. Nelson dissenting.

I respectfully dissent. In deciding Issue 1, we hold that the District Court properly applied the "time rule" in dividing Bill's Frontier Airlines pension. I disagree. In Rolfe v. Rolfe (1988), 234 Mont. 294, 766 P.2d 223, a case in which the time rule was applied, we recognized the general rule that "the proper test for determining the value of a pension is present value." Rolfe, 766 P.2d at 225, citing In re Marriage of Bowman (1987), 226 Mont. 99, 734 P.2d 197. See also Kis v. Kis (1982), 196 Mont. 296, 301, 639 P.2d 1151, 1153. In Rolfe, the time rule was utilized because various unknowns and contingencies in the husband's pension, including his contributions, nonvested benefits, employer's future contributions, benefit formulations, early retirement and disability, made application of the generally accepted "present value rule" inadequate. Rolfe, 766 P.2d at 223-224.

We are clearly not presented with that situation in the instant case. To the contrary, the value of Bill's retirement benefits as of the date of the parties' marriage was ascertainable; his benefits were liquidated during the marriage; and the remaining balance of those benefits was not only clearly ascertainable, but was sitting in two bank accounts ready for distribution.

While the majority discounts Tanya's evidence of the value of Bill's pension at the start of the marriage, Bill offered nothing to refute that evidence, and, in fact, was contradictory in his own testimony. When asked his opinion of the value of the pension at the start of the marriage in 1980, Bill stated, alternatively, that

it "[p]robably didn't have any value at that time," or that he had "no idea." Yet, having taken that position, he, nevertheless, maintained that the ultimate value of the pension accrued over a period of 24 years and 3 months, from 1962 to 1986. Moreover, while he denied that the figures were in his hand writing, Bill was apparently willing, nonetheless, to let stand for purposes of his banking business, the $32,000 valuation of his pension on his personal financial statement dated December 3, 1980, submitted to First Security Bank of Kalispell, and the $24,000 valuation on his financial statement dated August 27, 1979, both of which were admitted at trial. Taken together, those statements and Bill's inability or unwillingness to place any other valuation on his pension as of 1980, provide substantial, and, in fact, the only, evidence that the value of his pension at the time of the marriage was $32,000.

The majority concludes that it is implausible, based on Tanya's evidence, that the value of Bill's pension increased from $32,000 in 1980 to $371,765, in 1989, when the lump sum was paid. Yet, the majority apparently has no trouble in accepting the plausibility of Bill's testimony that his pension increased from "no value" to $371,765, during that same period of time. At least Tanya's expert explained that increase, referencing unusually high interest rates. Bill offered no explanation.

While the trial court is obviously charged with finding the facts and resolving disputed facts based upon the testimony and the evidence, the court is not at liberty to simply ignore what

10

evidence there is in order to arrive at some more seemingly preferable result. Here, according to the only testimony offered, the pension had either "no value" in 1980 (according to Bill) or it had a value of $32,000 (according to Tanya); either way the time-of-marriage value was established by the parties' testimony, and that evidence could not be simply disregarded.

In short, the facts in this case presented none of the unknowns or uncertainties that necessitated the application of the Rolfe time rule. Rather, I would hold that the court erred in not valuing and distributing Bill's pension on the basis of the generally accepted present value rule. There is nothing in this case to justify application of the Rolfe exception. Unfortunately, in failing to follow the proper rule, we further muddy the waters in an area of the law where there are already few clear rules to guide the bench and practicing bar.

With respect to Issue 2, I conclude that, on the evidence presented at trial, the Glacier Bank account should not have been included as a marital asset. Clearly, at least two-thirds of the account balance derived from a gift from Tanya's father; approximately one-third of the account did not belong to either Tanya or Bill; and Bill did not contribute to the maintenance of the account.

On the basis of the foregoing, I would reverse and remand for further proceedings. Accordingly, I respectfully dissent.

_____
Justice

April 26, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Stephen C. Berg
Warden, Christiansen, Johnson & Berg
Box 3038
Kalispell MT 59903-3038

Marshall Murray
Murray & Kaufman
Box 728
Kalispell MT 59903-0728

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy