JUSTICE NELSON
dissenting.
I respectfully dissent. In deciding Issue 1, we hold that the District Court properly applied the “time rule” in dividing Bill’s Frontier Airlines pension. I disagree. In Rolfe v. Rolfe (1988), 234 Mont. 294, 766 P.2d 223, a case in which the time rule was applied, we recognized the general rule that “the proper test for determining the value of a pension is present value.” Rolfe, 766 P.2d at 225, citing In re Marriage of Bowman (1987), 226 Mont. 99, 734 P.2d 197. See also Kis v. Kis (1982), 196 Mont. 296, 301, 639 P.2d 1151, 1153. In Rolfe, the time rule was utilized because various unknowns and contingencies in the husband’s pension, including his contributions, nonvested benefits, employer’s future contributions, benefit formulations, early retirement and disability, made application of the generally accepted “present value rule” inadequate. Rolfe, 766 P.2d at 223-224.
We are clearly not presented with that situation in the instant case. To the contrary, the value of Bill’s retirement benefits as of the date of the parties’ marriage was ascertainable; his benefits were liquidated during the marriage; and the remaining balance of those benefits was not only clearly ascertainable, but was sitting in two bank accounts ready for distribution.
While the majority discounts Tanya’s evidence of the value of Bill’s pension at the start of the marriage, Bill offered nothing to refute that evidence, and, in fact, was contradictory in his own testimony. When asked his opinion of the value of the pension at the start of the marriage in 1980, Bill stated, alternatively, that it “[p]robably didn’t have any value at that time,” or that he had “no idea.” Yet, having taken that position, he, nevertheless, maintained that the ultimate value of the pension accrued over a period of 24 years and 3 months, from 1962 to 1986. Moreover, while he denied that the figures were in his hand writing, Bill was apparently willing, nonetheless, to let stand for purposes of his banking business, the $32,000 valuation of his pension on his personal financial statement dated December 3, *128 1980, submitted to First Security Bank of Kalispell, and the $24,000 valuation on his financial statement dated August 27, 1979, both of which were admitted at trial. Taken together, those statements and Bill’s inability or unwillingness to place any other valuation on his pension as of 1980, provide substantial, and, in fact, the only, evidence that the value of his pension at the time of the marriage was $32,000.
The majority concludes that it is implausible, based on Tanya’s evidence, that the value of Bill’s pension increased from $32,000 in 1980 to $371,765, in 1989, when the lump sum was paid. Yet, the majority apparently has no trouble in accepting the plausibility of Bill’s testimony that his pension increased from “no value” to $371,765, during that same period of time. At least Tanya’s expert explained that increase, referencing unusually high interest rates. Bill offered no explanation.
While the trial court is obviously charged with finding the facts and resolving disputed facts based upon the testimony and the evidence, the court is not at liberty to simply ignore what evidence there is in order to arrive at some more seemingly preferable result. Here, according to the only testimony offered, the pension had either “no value” in 1980 (according to Bill) or it had a value of $32,000 (according to Tanya); either way the time-of-marriage value was established by the parties’ testimony, and that evidence could not be simply disregarded.
In short, the facts in this case presented none of the unknowns or uncertainties that necessitated the application of the Rolfe time rule. Rather, I would hold that the court erred in not valuing and distributing Bill’s pension on the basis of the generally accepted present value rule. There is nothing in this case to justify application of the Rolfe exception. Unfortunately, in failing to follow the proper rule, we further muddy the waters in an area of the law where there are already few clear rules to guide the bench and practicing bar.
With respect to Issue 2,1 conclude that, on the evidence presented at trial, the Glacier Bank account should not have been included as a marital asset. Clearly, at least two-thirds of the account balance derived from a gift from Tanya’s father; approximately one-third of the account did not belong to either Tanya or Bill; and Bill did not contribute to the maintenance of the account.
On the basis of the foregoing, I would reverse and remand for further proceedings. Accordingly, I respectfully dissent.