

DA 10-0395

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 54

IN RE THE MARRIAGE OF

CELEST MARIE KESSLER,

Petitioner and Appellee,

and

WILLIAM CHARLES KESSLER,

Respondent and Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 09-0452
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Kevin T. Sweeney, Attorney at Law, Billings, Montana

For Appellee:

J. Reuss; Guthals, Hunnes & Reuss, P.C., Billings, Montana

Submitted on Briefs:  February 9, 2011
Decided:  March 23, 2011

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1　William Kessler (William) appeals from the decree of the Thirteenth Judicial District, Yellowstone County, that dissolved his marriage to Celest Kessler (Celest) and distributed their marital estate. We affirm.

¶2　We consider the following issues on appeal:

¶3　*Did the District Court incorrectly allow William to represent himself pro se after it had appointed William a guardian ad litem due to mental health concerns?*

¶4　*Did the District Court improperly distribute Civil Service Retirement System benefits?*

¶5　*Did the District Court improperly distribute appreciation on William's inherited property?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6　Celest and William married on January 26, 1980. They have two adult children who are capable of self-support. William worked as a Revenue Agent for the U.S. Treasury until his disability and retirement on March 1, 2008. Celest holds an accounting degree and works as an accountant in Billings, Montana. Celest petitioned for dissolution of marriage on April 22, 2009.

¶7　William initially retained attorney Connie Camino to represent him in the dissolution. Camino filed a petition to appoint a guardian ad litem on June 15, 2009. Camino had learned from William's psychologist, Dr. William Bredehoft, that William suffered from organic affective disorder. Bredehoft advised Camino that William had been seeing a psychiatrist, Dr. Kelso, and had been taking psychiatric medication. Bredehoft opined that

2

William could not represent himself competently in stressful situations such as being in a court setting. The District Court appointed William's sister, Colleen Kirven, as guardian ad litem on June 17, 2009.

¶8     Camino served Celest with William's preliminary asset and liability disclosure and conducted initial discovery. Camino withdrew as counsel on February 8, 2010. The record discloses only that Camino withdrew for good cause and without objection. Camino asked in her motion to withdraw that the court give William enough time to retain new counsel. Camino mailed the case file to Colleen on February 10, 2010. In her letter, Camino advised Colleen to seek an independent evaluation of the value of William's Civil Service Retirement System (CSRS) disability pension and expressed her hope that William had retained new counsel. Camino copied William on the letter.

¶9     William chose not to retain another attorney. William filed an entry of appearance pro se on February 25, 2010. The record does not contain evidence of Colleen's involvement in William's choice to represent himself pro se. The court held a trial on the morning of May 28, 2010. Colleen accompanied William throughout the trial. William informed the court at the beginning of the trial that he would represent himself pro se and that Colleen's husband, a Wyoming attorney, would sit with him through the trial. Both William and Celest testified and offered exhibits during the trial.

¶10    The marital estate consisted of approximately $1.5 million worth of assets. William's CSRS disability benefit comprised the largest asset of the marital estate with a present value of $860,201. William selected 100% survivor benefits payable to Celest when he retired.

3

Celest testified that it was not feasible for William to pay one half of his disability to her. The court found that William could not meet his monthly expenses if Celest received one-half of his CSRS benefits.

¶11 Legal Economic Evaluations had valued William's CSRS benefit for Celest. William's CSRS benefit represented both his pension and any payments that he would receive from Social Security. The court concluded that the pension amount of the CSRS benefit could not be divided from the Social Security amount. The court recognized that the pension amount, but not the Social Security amount, was subject to distribution. The court concluded that the fairest resolution required it to calculate both William's and Celest's retirement income streams and equally apportion the amounts.

¶12 The parties also contested the distribution of $253,744 that William had inherited from his mother's estate in 2003. William had invested these funds in Schwab and Scottrade accounts and had purchased personal property used by Celest and William. The District Court concluded that the inheritance funds should be set over to William and not be included in the distributable marital estate to the extent the funds could be traced to William's inheritance. An issue remained regarding entitlement to appreciation on the investment accounts. William claimed that the appreciation should be set aside separately to him. William did not provide evidence of appreciation. William did not provide an allocation of appreciation in the accounts that could be traced to the inheritance funds as opposed to appreciation in the accounts that could be traced to marital property that had been deposited into the accounts.

4

¶13 The court did not rule at the close of the trial, but decided to consider further the evidence of the disputed accounts. The court requested that the parties file post-trial amended proposed findings of fact and conclusions of law, including the value of their accounts as of May 28, 2010. The court issued a written order directing the parties to provide documentation to verify the value of their accounts as of May 28, 2010. The court's order required the parties to submit account balance verifications by July 2, 2010.

¶14 The court issued a finding of fact that Celest had provided her account documentation on June 9, 2010. Celest also filed her post-trial proposed findings of fact, conclusions of law and final decree on July 6, 2010. William did not make a similar filing and did not provide the court with account balances information. William did submit other information after the deadline. The court rejected these submissions for untimeliness and because they constituted new evidence. The court divided equally the value of William's investment accounts in the absence of any account balance information from William.

STANDARD OF REVIEW

¶15 This Court will not set aside a district court's findings of fact regarding the division of marital property unless they are clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of witnesses. *In re Marriage of Williams*, 2009 MT 282, ¶ 14, 352 Mont. 198, 217 P.3d 67. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Id.* Absent a clearly erroneous finding of fact, we affirm a district court's distribution of property unless the

5

district court has abused its discretion. *Id.* A district court abuses its discretion when it acts arbitrarily without conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice. *Id.* We review a district court's conclusions of law for correctness. *Id.*

DISCUSSION

¶16 *Did the District Court incorrectly allow William to represent himself pro se after it had appointed William a guardian ad litem due to mental health concerns?*

¶17 William argues that the court should not have allowed him to represent himself in the dissolution proceedings. William argues that the trial record demonstrates that he failed to represent himself competently. Celest responds that William failed to preserve the issue for appeal. Celest also contends that the District Court did not have a duty to appoint counsel for William in this dissolution proceeding.

¶18 William cites the Montana Rules of Civil Procedure, the Canons of Judicial Ethics, and *In re Marriage of Rolfe,* 216 Mont. 39, 699 P.2d 79 (1985), in support of his proposition that the court should appoint counsel or stand-by counsel whenever it appoints a guardian ad litem. No legal authority or argument supports applying the Canons of Judicial Ethics to the District Court's decision to allow William to represent himself. Moreover, this Court replaced the Canons of Judicial Ethics with the Code of Judicial Conduct in 2008. The Code of Judicial Conduct explains that it does not provide "the basis for litigants to seek to change a judge's decision" or "to obtain tactical advantages in proceedings before a court." 2008 Mont. Code of Jud. Conduct 2.

6

¶19     The District Court also did not violate M. R. Civ. P. 17(c) by allowing William to represent himself. M. R. Civ. P. 17(c) requires the appointment of a guardian ad litem for an incompetent person or "such other order as it deems proper for the protection" of the incompetent person. The District Court appointed Colleen as William's guardian ad litem.

¶20     M. R. Civ. P. 17(c) does not require that an attorney be appointed in addition to a guardian ad litem. Nothing in the record indicates that Colleen sought to obtain counsel, but was unable to obtain counsel for any reason. In fact, Colleen's husband is an attorney licensed in Wyoming. Both Colleen and her husband accompanied William throughout the trial. They did not object or assert to the District Court that William's interests had not been protected.

¶21     William did not request that an attorney be provided to him during pretrial or at trial. He did not indicate to the District Court that he could not proceed without court-appointed counsel. He did not indicate that he could not afford an attorney. William cites *In re Marriage of Rolfs,* but that case has no application here. The Court specifically limited that case's applicability to "court-appointed representation of a child in a custody dispute arising out of a divorce." *In re Marriage of Rolfs,* 216 Mont. at 50, 699 P.2d at 85. The District Court did not incorrectly allow William to represent himself pro se after having appointed Colleen as his guardian ad litem. The District Court also did not fail to "make such other order" as proper for William's protection. M. R. Civ. P. 17(c).

¶22     *Did the District Court improperly distribute Civil Service Retirement System benefits?*

¶23    Section 40-4-202(1), MCA, controls a district court's division of property in a marital dissolution.  The court shall "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title . . . is in the name of the husband or wife or both."  Section 40-4-202(1), MCA.  The district court must consider many factors in its apportionment, including the duration of the marriage; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each party for future acquisition of capital assets and income.  *In re Marriage of Williams,* ¶ 16.

¶24    William argues that the court erroneously adopted the valuation of William's CSRS disability benefit because the valuation did not consider William's shortened life expectancy due to his mental illness.  The court found William's CSRS benefit to have a present value of $860,201.  The court based this finding on Celest's trial Exhibit 2, an evaluation of the CSRS benefit compiled by Legal Economic Evaluations.  William had notice of the Legal Economic Evaluation since at least February 2010, when Connie Camino referenced the evaluation in her withdrawal letter to William and Colleen and advised them to seek a second evaluation.  William apparently did not seek a second evaluation and did not object to the exhibit's admission at trial.

¶25    William raises the issue of his life expectancy for the first time on appeal.  William cites *In re Marriage of Bowman,* 226 Mont. 99, 734 P.2d 197 (1987), for the rule that a court must use sound, reliable life expectancy calculations in determining the present value of a

8

pension benefit. William overlooks the fact that the parties in that case both presented evidence and disputed the calculations before the district court. *In re Marriage of Bowman,* 226 Mont. at 109, 734 P.2d at 203. The Court reversed in *In re Marriage of Bowman* because the district court had made an arbitrary calculation of life expectancy that had no foundation in the evidence presented. *Id.*, 734 P.2d at 203.

¶26 William did not present evidence on the value of the CSRS benefit. William did not contest the accuracy of the valuation provided by Legal Economic Evaluations. William did not object to the normal life expectancy assumption underlying the valuation completed by Legal Economic Evaluations. William did not put on any evidence that he suffered a mental illness and that his mental illness lessened his life expectancy.

¶27 This Court generally will not address an issue raised for the first time on appeal or a party's change in legal theory. *In re T.C.,* 2008 MT 335, ¶ 20, 346 Mont. 200, 194 P.3d 653. We repeatedly have held that the complaining party must make a timely objection and state the specific grounds for objection in order to preserve an objection for purposes of appeal. *In re Bower,* 2010 MT 19, ¶ 20, 355 Mont. 108, 225 P.3d 784. The District Court did not abuse its discretion by not reducing the CSRS valuation for reduced life expectancy when the parties presented no evidence that William's mental illness reduced his life expectancy.

¶28 *Did the District Court improperly distribute appreciation on William's inherited property?*

¶29 William and Celest agreed that the $253,744 that William had inherited from his mother's estate belonged solely to William. William had invested some of the inheritance in

9

several investment accounts and had used some to purchase personal items, like vehicles and a trailer. Both parties submitted spreadsheets identifying the marital assets, including the investment accounts. The court granted to William the amount in each account that he claimed as traceable to the inheritance.

¶30 The investment accounts also may have included amounts attributable to the marital estate and to appreciation. William argued that appreciation on the amounts traceable to inheritance belonged solely to him. William failed to present legal authority for this argument. William also failed to present accurate account balances. He claimed that market fluctuations prevented him from providing that information. The court ordered the parties to submit post-trial documentation that verified the balances of the accounts. William failed to provide this information and the court decided that the accounts, after subtracting the traceable inheritance amounts, would be divided equally between the parties without adjustments for traceable appreciation.

¶31 William argues that Celest contributed nothing to the appreciation of the inheritance funds. William and Celest agree that appreciation on the assets traceable to one spouse's inheritance may be allocated solely to the inheriting spouse. *In re Marriage of Steinbeisser,* 2002 MT 309, 313 Mont. 74, 60 P.3d 441; *In re Marriage of Grendy,* 2004 MT 36, 320 Mont. 38, 85 P.3d 788. Celest responds, however, that William failed to preserve the issue for appeal, that William waived this argument by not complying with the court's order to provide updated account balances, and that the accounts likely accrued no appreciable value,

10

as most all investment accounts of this type suffered large losses between the time of inheritance in 2003 and the time of trial in 2010.

¶32 We conclude that William preserved this argument for appeal by arguing to the District Court that appreciation on the accounts should be attributed solely to him. The court's findings of fact reflect that William presented the court with this argument. Even though William preserved the legal argument for appeal, however, William failed to submit substantial, credible evidence that appreciation on the accounts actually existed. William's refusal or neglect to provide the court with evidence of the account balances left the court without evidence of appreciation in the accounts.

¶33 William could have attempted to prove that appreciation existed, either at the time of trial or pursuant to the court's order to supplement the record with verification of the account balances. By refusing or failing to provide the court with this evidence, William failed to prove that any appreciation actually existed. The court divided the investment accounts by first setting aside to William the asserted inheritance amounts that had been allegedly deposited into those accounts. The court then equally divided the remainder of the accounts' balances. The equitable resolution crafted by the court protected Celest's one-half interest in any amounts of marital property that had been deposited into the investment accounts. We conclude that the court did not distribute incorrectly the investment accounts when it equally distributed them after setting aside the asserted inheritance amounts.

¶34 Affirmed.

/S/ BRIAN MORRIS

11

We Concur:


/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE