# IN RE THE MARRIAGE OF:
## TODD DELROY SCHMIDT,
### Petitioner and Appellee,
## AIMEE CATHERINE SCHMIDT,
### Respondent and Appellant.

No. DA 12-0731.
Submitted on Briefs May 8, 2014.
Decided July 15, 2014.
2014 MT 182.
375 Mont. 420.
329 P.3d 570.

For Appellant: **Ryan A. Phelan**, P. Mars Scott Law Offices, Missoula.

For Appellee: **Penni L. Chisholm**, Chisholm & Chisholm, P.C., Columbia Falls.

JUSTICE McKINNON delivered the Opinion of the Court.

¶1 Aimee Catherine Schmidt appeals from the decree dissolving her marriage to Todd Delroy Schmidt. We remand for the entry of a corrected judgment as discussed under Issue 2 and a corrected retirement benefits order for Aimee's Thrift Savings Plan retirement account. In all other respects, we affirm the findings, conclusions, and decree entered by the Eleventh Judicial District Court, Flathead County.

¶2 The issues on appeal are:

*1. Did the District Court err in determining the parenting schedule?*

*2. Did the court err by including Aimee's Russell Country Federal Credit Union account twice in its calculation of the marital estate?*

*3. Did the court err in determining the value of the Three Rivers bank account?*

*4. Did the court err by including the value of a post-separation account held under the name of Jeffrey S. Lamoreaux in its distribution of the marital estate?*

*5. Did the court err by issuing a retirement benefits order that was inconsistent with the decree of dissolution?*

Todd Schmidt asks to be awarded his fees and costs on appeal.

## BACKGROUND

¶3 Todd Schmidt and Aimee Schmidt were married in 2002, and one son, C.R., was born to them. In 2010, Todd petitioned to dissolve the marriage. On motion of the parties, the District Court appointed a guardian ad litem (GAL) to investigate the best interests of 8-year-old C.R. with respect to parenting.

¶4 In June of 2012, the District Court held a hearing on the disputed issues of parenting, child support, and distribution of marital property.

The court heard testimony from the GAL, the company commander and human resources officer for Aimee's National Guard unit, Todd, and Aimee. The parties introduced into evidence numerous exhibits regarding parenting, their bank accounts, and other financial matters.

¶5 In October 2012, the District Court entered its findings, conclusions, and a decree of dissolution. The court found that both Todd and Aimee were employed and in good health and that Aimee was scheduled to be deployed with the National Guard in November of 2012 for one year. The court ordered that, when Aimee is unable to care for C.R. due to her military commitment, C.R. will live with Todd. The court adopted a parenting plan under which C.R., who had been spending alternating weeks with each parent, will primarily live with Todd and "Aimee will have parenting time with him at any and all reasonable times," presumptively including every other weekend, one weekday evening each week, alternating holidays, and extended summer visits. The court ordered Aimee to pay Todd $557 per month for child support, as calculated under the Montana Child Support Guidelines.

¶6 In its findings and conclusions, the District Court also resolved differences between the parties on valuation of the marital home and whether, and in what amounts, various other assets and debts should be included in the marital property. The court divided the marital property 50/50. To equalize the division of property, the court ordered Aimee to pay Todd $29,612.

¶7 Aimee appeals.

## STANDARDS OF REVIEW

¶8 We review a parenting determination to decide whether the district court's findings of fact are clearly erroneous. Because the district court is in a superior position to weigh the evidence, we will not overturn a parenting determination unless the district court has clearly abused its discretion. *In re Marriage of Graham*, 2008 MT 435, ¶ 8, 347 Mont. 483, 199 P.3d 211.

¶9 We will not set aside a district court's findings of fact regarding the division of marital property unless those findings are clearly erroneous, giving due regard to the opportunity of the district court to judge the credibility of witnesses. We review a district court's conclusions of law for correctness. *In re Marriage of Kessler*, 2011 MT 54, ¶ 15, 359 Mont. 419, 251 P.3d 147.

## DISCUSSION

¶10 *Issue One: Did the District Court err in determining the parenting schedule?*

¶11 Aimee claims the District Court's decision on the matter of C.R.'s parenting was an abuse of discretion. She specifically challenges the District Court's finding that the GAL "testified that Todd should be the child's primary caretaker." Aimee's position is that she should have equal parenting time with C.R. after she returns from her year-long deployment. She maintains the GAL's trial testimony fully supports this.

¶12 We first address the challenged finding of fact, which is finding number 13. In that finding, the court described Aimee's failure to disclose her impending National Guard deployment to the GAL, and the GAL's opinion that Aimee should have brought that information to her attention. The finding then states the GAL "testified that Todd should be the child's primary caretaker."

¶13 In questioning the GAL at the hearing, Todd's counsel went through 9 provisions he had proposed in writing for the parenting plan, and asked the GAL for her comments on each one. Todd's proposed parenting provision number 9 stated:

> Upon Aimee's return from deployment, anticipated in November, 2013, the child will have lived solely with Todd for a year and the child will need consistence in his schedule. Thus, the child will continue to reside primarily with Todd and the parties will either agree on a schedule for parenting time, attend mediation, or seek the appointment of a GAL to offer recommendations regarding the child's best interest at that point.

Todd's counsel asked the GAL whether she agreed provision number 9 was in C.R.'s best interest and the GAL replied, "Absolutely."

¶14 Other testimony by the GAL was equivocal as to a parenting recommendation following Aimee's return from deployment. As noted above, the GAL learned of Aimee's impending deployment only just before the hearing. In her written report to the court, which she had prepared before Aimee informed her of the upcoming deployment, the GAL recommended that a joint shared parenting plan be developed under which Todd would be designated as the residential parent for purposes of jurisdiction, school enrollment, and similar matters, and Todd and Aimee would exercise their parental time on the alternate-week basis they had established. At the hearing, the GAL expanded upon this by testifying that Todd "was definitely there more often" and that Aimee's job required her to travel. The GAL further testified that

she felt Aimee should have brought her impending deployment to the GAL's attention.

¶15 Where trial evidence is inconsistent, it is the prerogative of the trial court to resolve those inconsistencies. *Interstate Prod. Credit v. DeSaye*, 250 Mont. 320, 324, 820 P.2d 1285, 1287-88 (1991). There are inconsistencies in the GAL's testimony regarding her recommendation for C.R.'s future living arrangements. However, finding number 13 is not clearly erroneous in light of the GAL's testimony that it would "absolutely" be in C.R.'s best interests to reside with Todd.

¶16 We now turn to the question of whether the District Court's parenting plan represents an abuse of discretion. As Aimee points out, in *Puccinelli v. Puccinelli*, 2012 MT 46, 364 Mont. 235, 272 P.3d 117, we reversed a parenting plan on grounds that it was not supported by evidence at trial but only by post-trial GAL recommendations not subject to cross-examination.

¶17 In contrast to the situation in *Puccinelli*, the District Court's parenting plan in the present case was supported by evidence at trial. The court had heard the GAL's testimony that residing with Todd would be in C.R.'s best interests. Among other unchallenged findings, the court also found:

> Although there is not sufficient evidence to conclude that [C.R.] is currently harmed by the alternating week schedule, Aimee's parenting style with her daughters and [C.R.] establishes that she is unable or unwilling to co-parent, and such skills will become more important as [C.R.] gets older. Todd's home and parenting style offers greater stability and continuity of care for [C.R.]. The child should be placed in Todd's primary care and the Final Parenting Order issued contemporaneously herewith is in the child's best interest.

We conclude *Pucinnelli* is not on point.

¶18 In addition, after having learned of Aimee's impending deployment just before the hearing, the GAL prepared and filed with the court a second, "interim" report. In that report, the GAL recommended that C.R. live with Todd during the deployment. The GAL recommended that, after Aimee's deployment, C.R. should continue to reside primarily with Todd, and the parties should either agree on a schedule for parenting time, attend mediation, or seek the appointment of a GAL to offer recommendations regarding his best interests at that point in time. Aimee never asked for a hearing or asserted any right to examine the GAL about her "interim" report.

¶19 Aimee also relies on § 40-4-219(10)(a), MCA, which provides:

Except as provided in subsection (10)(b), a court-ordered or de facto modification of a parenting plan based in whole or in part on military service orders of a parent is temporary and reverts to the previous parenting plan at the end of the military service. If a motion for an amendment of a parenting plan is filed after a parent returns from military service, the court may not consider a parent's absence due to that military service in its determination of the best interest of the child.

This statute does not apply here because the parenting plan adopted by the District Court was the original court-ordered parenting plan, not a modification of a parenting plan based on Aimee's service in the military. We observe that Aimee retains the right under § 40-4-219, MCA, to move for an amendment of the parenting plan based on changed circumstances that may occur in the future.

¶20 ▋ We hold that Aimee has failed to establish that the District Court's finding of fact number 13 was clearly erroneous or that the court clearly abused its discretion in the parenting plan it adopted.

¶21 *Issue Two: Did the court err by including Aimee's Russell Country Federal Credit Union account twice in its calculation of the marital estate?*

¶22 The District Court set forth its valuation of the various components of the marital estate in a spreadsheet format. Aimee argues that the court erred by including her Russell Country Federal Credit Union checking account twice on the spreadsheet; once with an approximate value of $2,947 and then again with an approximate value of $1,625. The court allocated both amounts to Aimee. This was clear error, claims Aimee.

¶23 The record confirms Aimee's argument. The District Court's spreadsheet shows the same account number for both of the Russell Country accounts it lists. Hearing Exhibit 17—the only bank statement in the record concerning the Russell Country accounts—shows that Aimee held two Russell Country accounts as of May 31, 2010. She held a "primary shares" balance of $289.30 and a "free checking draft" balance of $1,624.82. We observe that the "free checking draft" account approximates the $1,625 amount allocated to Aimee by the District Court in its second allocation of the Russell Country account to her.

¶24 Todd relies on the District Court's finding that "Aimee's history of transferring funds to and from numerous accounts, over 13 separate accounts, and her refusal to answer Todd's questions regarding marital funds made it inequitable to divide all of the assets on one particular

date." Although this statement by the District Court provides a rationale for using various dates for valuing assets, it does not provide a rationale for including the Russell County account balance in the marital estate twice. The total amount the District Court has credited to Aimee, $4,572, exceeds by a considerable amount the $1,914.12 total value of the two accounts shown on the Russell Country May 2010 bank statement.

¶25 ■ We hold that the District Court erred in including Aimee's Russell Country checking account in the marital estate twice. This case is remanded to allow the District Court to correct that error and to adjust the total marital estate value and equalization payment from Aimee to Todd accordingly.

¶26 *Issue Three: Did the court err in determining the value of the Three Rivers bank account?*

¶27 Aimee points out that the bank statements from Three Rivers Bank that were introduced into evidence showed that the balance in the parties' account at that bank fluctuated significantly over time. She argues the District Court abused its discretion when it valued that account at $34,840 as of May of 2009 instead of at $2,297.98 as of May of 2010—the date as of which the court valued most other property in the marital estate.

¶28 We have stated that a district court may use different dates for valuing the assets of the parties if appropriate under the circumstances. An equitable apportionment of marital property is more important than "designating the moment" at which the court should value marital property. *Schwartz v. Harris,* 2013 MT 145, ¶ 18, 370 Mont. 294, 308 P.3d 949.

¶29 ■ Aimee contends, incorrectly, that the District Court did not articulate its reasons for determining the dates for valuing the respective bank accounts and, specifically, the Three Rivers bank account. To the contrary, the court found that "Aimee's history of transferring funds to and from numerous accounts, over 13 separate accounts, and her refusal to answer Todd's questions regarding marital funds made it inequitable to divide all of the assets on one particular date." The court further found that

Todd established that before the divorce was filed, the parties had at least $34,840 in joint savings to which both parties had contributed. Aimee seized sole control over these funds without Todd's knowledge or consent, and transferred funds to numerous accounts to which Todd did not have access. It is fair and equitable to include in the marital estate the sum of $34,840 and

allow Aimee to keep all of the bank accounts to which she appeared to have transferred such funds.

The District Court thereby described the circumstances justifying the use of different dates for valuing the assets of the parties.

¶30 We hold Aimee has not established that the District Court erred in determining the value of the Three Rivers bank account.

¶31 *Issue Four: Did the court err by including the value of a post-separation account held under the name of Jeffrey S. Lamoreaux in its distribution of the marital estate?*

¶32 In response to discovery requests concerning all bank accounts in which she had an interest, Aimee had provided a February 29, 2012 bank statement for a Rocky Mountain Bank account held under the name of Jeffrey S. Lamoreaux. Lamoreaux was living with Aimee at the time of the hearing. The court included approximately one-half of the value of the account—$5,000—as an asset allocated to Aimee in the distribution of the marital estate.

¶33 On appeal, Aimee asserts that the District Court abused its discretion when it included the Rocky Mountain account in its valuation and distribution of the marital estate. She argues that the account did not exist during the parties' marriage and was held solely in the name of a third party.

¶34 In addition to the finding mentioned above about Aimee's history of transferring funds to and from numerous accounts without Todd's knowledge or consent, the court found "Aimee admitted at trial that she had failed to include on her disclosure [of assets] an account held in her boyfriend's name that also contained funds contributed by her. Thus, it is equitable to include in the marital estate the Rocky Mountain Bank account[.]" Under cross-examination by Todd's attorney, Aimee testified the money in the Rocky Mountain Bank account "is not all his, it's not all mine," without specifying the amount of money she had in that account.

¶35 Under these circumstance, we hold that the District Court did not err in including half of the value of the Lamoreaux Rocky Mountain Bank account in the marital estate.

¶36 *Issue Five: Did the court err by issuing a retirement benefits order that was inconsistent with the decree of dissolution?*

¶37 The District Court's decree of dissolution provides that "[t]he amounts accrued in Aimee's retirement accounts during the marriage should be divided equally between the parties ... and Aimee shall prepare the ... necessary documents to effectuate this division within 30 days after the date this Decree is entered." As Aimee points out, the

court's January 15, 2014 Retirement Benefits Order awarded Todd 50% of her Thrift Savings Plan retirement account, regardless of when it was accrued. Aimee characterizes this as a clerical error that must be corrected.

¶38 Todd maintains Aimee waived her right to appeal this question because she refused to participate in the process of preparing the orders to divide her retirement accounts. He also points out that the notice of appeal was filed before the retirement benefits order was entered.

¶39 It is plain from the record that the retirement benefit order is inconsistent with the decree on which it is based. Aimee is correct that this represents a clerical error that must be corrected. For purposes of judicial expediency, we order the District Court to enter a corrected retirement benefit order as to Aimee's Thrift Savings Plan retirement account.

*Fees and costs.*

¶40 Todd asks this Court to order Aimee to pay his costs on appeal. Additionally, he requests sanctions, in the form of his attorney fees, against Aimee under M. R. App. P. 19(5), on grounds that she took this appeal without sufficient and reasonable grounds, causing further delay and harassment, and based on mischaracterization of the factual record.

¶41 ▮ M. R. App. P. 19(3)(a) provides that "[c]osts on appeal will be awarded to the prevailing party unless otherwise specifically provided by the supreme court in its decision." Inasmuch as Aimee has prevailed on Issues 2 and 5, we conclude Todd is not entitled to costs as a prevailing party, and that sanctions are not justified.

## CONCLUSION

¶42 This case is remanded to the District Court for entry of a corrected judgment as discussed under Issue 2 and a corrected retirement benefits order regarding Aimee's Thrift Savings Plan retirement account. In all other respects, we affirm the judgment entered by the District Court.

JUSTICES WHEAT, COTTER, BAKER and RICE concur.